## FINN, ET AL. VS. HEMPSTEAD, AD. ET AL.

An admission made by a guardian for infants in one suit cannot be used against them in another.

Crosby died leaving a will whereby he devised his whole estate to Finn, who was made sole executor thereof; Finn having qualified as such executor, the will was set aside by a proceeding at law, and the administrator and heirs of Crosby filed a bill against the administrator, widow and heirs of Finn, he having died, to compel them to account for the estate of Crosby: *Held*, that the widow was not responsible for *waste* committed by her husband as executor of Crosby.

She was only answerable for such of the assets of Crosby's estate as remained unadministered by her husband, and came into her possession after his death.

And for them, she was properly responsible to the administrator of Crosby, and not to his heirs,

Finn having died before the institution of the proceeding to test the validity of the will, while an appeal in that cause was pending in this court, the probate court granted letters of administration *de bonis non* on Crosby's estate: *Held*, that while it would have been more regular for the probate court to have deferred granting letters *de bonis non* until the appeal was determined, yet the executor of Crosby being dead, and the action of the probate court coming before us collaterally, there was no such want of jurisdiction as to render the grant of letters null and void. (*State vs. Richards*, 21 *Ark.*, 515; *Rogers vs. Duval*, 23 *ib.* 79.)

The extent of the power and authority of an administrator *de bonis non*, is simply to collect and administer such property and effects of the deceased unadministered by the former representative, as remain in specie and are capable of being ascertained and identified as the specific property or estate represented by him.

An administrator *de bonis non* cannot maintain a suit against a former executor or administrator, or his representatives, for effects of the estate wasted or converted by him; though such suit may be brought by creditors, distributees, or legatees.

By statute an administrator *de bonis non* may invoke the aid of the probate court against his predecessor or his legal representatives, to obtain possession of effects unadministered, or he may bring suit on the bond of the delinquent predecessor.

But he cannot compel the representatives of such delinquent to account in equity fc effects wasted or converted.

The after declarations of a vendor are worthless to invalidate a sale made or a bill of sale executed by him. (*Gullett vs. Lamberton*, 1 *Eng.*, 110.)

A bill of sale being an executed contract, the sufficiency of the consideration

112                    CASES IN THE SUPREME COURT

Finn, et al vs. Hempstead, ad., et al.          [December

could not be inquired into by those who claim to stand in the place of the vendor, except for the purpose of conducing to show that it was procured by coercion and fraud.

A slave, the property of Crosby, having come into possession of the widow of Finn, as guardian of her children, upon the affirmance by this court of the judgment of the circuit court in the case contesting the validity of Crosby's will, whereby the same was pronounced invalid, she should have surrendered him to the administrator *de bonis non* of Crosby, and paid to him a reasonable hire for his services from the time he came into her possession.

Certain assets, rents, hires, etc., of Crosby's estate having been administered into the estate of Finn, it is proper that his administrator should account therefor to the administrator *de bonis non* of Crosby.

But the administrator of Finn having distributed nearly all the estate in his hands, it is but just to charge the estate in the hands of the distributees with the payment of the value of the assets of Crosby, that were administered into Finn's estate.

Until the will of Crosby was finally adjudged to be invalid, no cause of action accrued to his administrator *de bonis non*, to recover the goods of Crosby that remained unadministered by Finn, and the statute of limitation would not begin to run until that time.

*Appeal from Hempstead Circuit Court in Chancery.*

Hon. L. B. GREEN, Circuit Judge.

GALLAGHER, for the appellant.

HEMPSTEAD, contra.

Mr. Chief Justice ENGLISH delivered the opinion of the court.

About the 10th of October, 1852, Joseph R. Crosby, who had neither wife nor children, died in Hempstead county, leaving a will, in which he named Richard H. Finn, as his executor, and devised to him his entire estate, after the payment of his debts.

The will was duly probated, in the probate court of Hempstead county, and letters testamentary granted to Finn, on the 23d of October, 1852, who qualified as executor.

On the 22d November, 1852, Finn returned an inventory and

appraisement of the personal estate of Crosby, including two slaves, *Dick* and *Nelly*.

On the 1st of April, 1854, Finn died, without having filed in the probate court any annual or final settlement of his accounts, as executor of Crosby, for settlement; and on the 23d. of May, 1854, letters of administration upon the estate of Finn were granted to James McDaniel, by the probate court of Hempstead county.

McDaniel, as such administrator, made out and filed in the probate court, for final settlement, a statement of Finn's account, as executor of Crosby, which on the 11th of January, 1855, after due public notice, was approved and confirmed by the court.

On the same day, after the confirmation of the account, the court, upon the petition of McDaniel, made an order that he take possession of Crosby's effects, and administer them as part of Finn's estate, he being Crosby's devisee.

It appears that Finn left a widow, Nancy, and four minor children, Catharine, Frances, John and Mary, and that the widow was appointed guardian of the children.

On the 15th of October, 1855, the probate court, upon the petition of Mrs. Finn, made an order that McDaniel, as administrator, etc., turn over to her, as such guardian, on the first of January following, all the slaves belonging to the estate of Finn (after her dower interest therein was set apart,) to be kept together by her, and worked for the benefit of the children.

At the June term 1856, of the circuit court of Hempstead county, Daniel P. Crosby and others, claiming to be the heirs at law of Joseph R. Crosby, filed a petition against McDaniel, as the administrator, and the widow and heirs of Finn, for the purpose of contesting the validity of Crosby's will. An issue of *devisavit vel non* was made up, and on the 7th of June, there were a verdict and judgment against the validity of the will. The defendants in the petition appealed to this court, and on the 4th of January, 1858, the judgment of the circuit court was affirmed. See *McDaniel, ad. vs. Crosby, et al.,* 19 *Ark.,* 533.

9

In the meantime, Bernard F. Hempstead applied to the probate court of Hempstead county for letters of administration, *de bonis non*, on the estate of Joseph R. Crosby, and on the 27th of October, 1856, letters were granted to him.

On the 22d of September, 1858, Hempstead, as such administrator *de bonis non*, and Daniel P. Crosby and others, claiming to be the heirs of Joseph R. Crosby, being the same persons who were plaintiffs in the petition to contest the validity of the will, filed a bill in the Hempstead circuit court, against the administrator, widow and heirs of Finn, alleging the facts above stated, and others that will be noticed in the course of this opinion; the object of which was to compel the defendants to account for the estate of Crosby, etc.

Upon the pleadings and evidence, a final decree was rendered against the widow and heirs of Finn, and they appealed to this court.

No decree was rendered against McDaniel, the administrator of Finn, except for costs, and he did not appeal.

A personal decree was rendered against Mrs. Finn, with her minor children; for the sum of $16,664 94, reciting that it appeared from the pleadings that they had assets in their hands, belonging to the estate of Finn, sufficient to pay the same, etc. The amount decreed against them was made up, by a master appointed by the court, of the rents of real estate, the value and hire of the slaves, *Amos*, *Dick* and *Nelly*, and the value of other personal property, and choses in action, alleged to have been the property of Crosby, with interest, etc.

Included in the amount, was the estimated value of goods, choses in action, rents, hires, etc., wasted or converted and appropriated by Finn to his own purposes, while acting as the executor of Crosby.

The decree was rendered in favor of the complainants generally, with direction that when the money was collected, Hempstead, as administrator *de bonis non* of Crosby, retain a sufficient sum to pay some debts which had been allowed in the probate court

against Crosby's estate, and which Finn as executor had failed to pay.

1. It is insisted that such of the complainants as claim to be the heirs of Crosby, were not admitted to be such by the answers, nor proven to be such upon the hearing, and consequently so much of the decree as was in their favor was erroneous.

It is alleged in the bill, in general terms, that they are the heirs and distributees of Crosby, but the relationship between him and them is not stated, and there was no proof upon the hearing that they were his heirs, or in any degree related to him.

The bill alleges, however, that upon the trial of the issue of *devisavit vel non*, it was admitted by the administrator, widow and heirs of Finn, that these complainants were the heirs and distributees of Crosby.

Mrs. Finn, in her answer to the bill, concedes that there was such an admission upon the trial of that issue, and there is a similar concession in the answer of the administrator. The guardian *ad litem* of Finn's heirs filed no answer, but adopted the answer of their co-defendants.

If it be conceded that the adoption of their answers adopted their admissions, the admission in question amounted to this, that in a former suit between the same parties, the guardian *ad litem* of the minor heirs of Finn, admitted that these complainants were the heirs and distributees of Crosby.

But the admission made by the guardian for the infants in that suit, cannot be used as evidence to support a decree against them in this. *Gresley's Eq. Ev.*, 50; *Miles vs. Dennis*, 3 *John. Ch.*, 368; 1 *Greenleaf's Ev.*, sec. 179.

So much of the decree therefore as is in favor of these complainants, as Crosby's heirs, against the infant heirs of Finn, is erroneous and must be reversed. *Blakeney vs. Ferguson, et al.*, 14 *Ark.*, 641; *Hardy vs Heard, et al.*, 15 *ib.*, 194; *Roane vs. Bonnell*, 20 *ib.*, 125.

Conceding that the admission was good against Mrs. Finn, the decree against her in favor of the complainants in question, as

the heirs of Crosby, was nevertheless erroneous, because she was not responsible for *waste* committed by her husband as executor of Crosby. She was only answerable for such of the assets of Crosby's estate as remained unadministered by her husband, and came into her possession after his death, and for them she was properly responsible to Hempstead as administrator *de bonis non* of Crosby, and not to the complainants claiming to be his heirs. See *Pope's Heirs, et al., vs. Boyd's adx.,* 22 *Ark.,* 535; *Lenox's Heirs vs. Rector,* 15 *Ark.,* 438.

2. But it is insisted that the grant of letters of administration *de bonis non* to Hempstead, upon the estate of Crosby, by the probate court, pending the appeal from the judgment of the circuit court in the proceedings to contest the validity of the will, was null and void, and that Hempstead, as such administrator, had no legal authority to maintain the bill, or obtain any decree.

The statute provides that, " if any will be proved, and letters testamentary thereon granted, and such will be afterwards set aside. The letters testamentary shall be revoked, and letters of administration *de bonis non* granted." *Gould's Dig., ch.* 4, *sec.* 33.

If Finn had been living, and acting as executor at the time the judgment of the circuit court, pronouncing the will invalid, was rendered, and had appealed therefrom, the probate court would, perhaps, have had no jurisdiction to grant letters *de bonis non* to Hempstead, pending the appeal, because an appeal in such case stays the judgment of the circuit court until the matter is determined by the appellate court.

But Finn had died before the institution of the proceedings to contest the validity of the will, and at the time the judgment was rendered, and the appeal taken, there was no executor or administrator of Crosby's estate, and no one representing the estate except the persons who claimed under Finn as devisee. And though the appeal stayed the judgment, and it would have been more regular for the probate court to have deferred the grant of letters *de bonis non* until after the appeal was determined, yet its

action coming before us collaterally, we think we may hold, consistently with previous decisions of this court, that there was no such want of jurisdiction, under the circumstances, as to render the grant of letters null and void. See *State vs. Richards et al.,* 21 *Ark.,* 515, *and cases cited; Rogers, ex'r, vs. Duval, ad.,* 23 *Ark,* 79.

3. But it is a well settled principle of the common law, that the extent of the power and authority, as well as of the duty of an administrator *de bonis non,* is simply to collect and administer such property and effects of the deceased, not administered by the former representative, as remain in specie, and are capable of being ascertained and identified as the specific property or estate represented by him. Hence, it has been held that an administrator *de bonis non* cannot maintain a suit at law, or bill in chancery, against a former executor or administrator, or his representatives, for effects of the estate wasted or converted by him, though such suit or bill may be brought by creditors, distributees or legatees. *Coleman vs. McMendo. et al.,* 5 *Rand.,* 51; *Stell ad. vs. Alexander ad.,* 2 *Sneed.,* 650; *Thomas vs. Stanley,* 4 *ib.,* 411; *Young vs. Kimball,* 8 *Blackf.,* 167; *Oldham vs. Collins,* 4 *J. J. Marsh.,* 49; *Felts vs. Brownsard,* 7 *ib.,* 147; *Thomas vs. Hardwick ex.,* 1 *Kelly* (*Geo.*) 80; *Oglesby vs. Gilmore et al.,* 5 *Geo.,* 58; *Cheatham ad. vs. Bearfoot,* 9 *Leigh,* 514; *Kelsay vs. Smith,* 1 *How.,* 80; *Stubblefield et al. vs. Raven et al.,* 5 *Sm. & M.,* 140; *Smith vs. Carrere,* 1 *Rich. Ch.,* 123; *Haythrop vs. Hook,* 1 *Gill & John.,* 270; *Hemphill vs. Hamilton,* 6 *Eng.,* 425; *State, use Higginbotham's ad. vs. Watts et al.,* 23 *Ark.,* 312.

In the case of *Coleman ad. vs. McMendo et al.,* above cited, JUDGE CARR, after reviewing the authorities on the subject, said: "To meet this formidable array, what is there on the other side? Not one single case; not the *dictum* of a single judge; not the assertion of one elementary writer, that the administrator *de bonis non,* either at law or in equity, can support an action, or file a bill for account, against the representative of a delinquent executor or administrator."

By statute, an administrator *de bonis non* may invoke the aid of the probate court against his predecessor, or his legal representatives, to obtain possession of effects unadministered, or he may bring suit upon the bond of the delinquent predecessor. *Gould's Dig.*, *ch.* 4, *secs.* 43, 44. But we have no statute authorizing him to compel the representatives of such delinquent to account in equity for effects wasted or converted.

It follows that Hempstead, as administrator *de bonis non* of Crosby, had no legal right to maintain the bill, or to obtain a decree against the widow and heirs of Finn, for the value of so much of the estate of Crosby as was wasted by him, or converted to his own use, while acting as the executor of Crosby.

4. The slave *Amos* was not included in the inventory of Crosby's estate returned by Finn as executor, nor was Finn charged with the value of *Amos* in the settlement of his accounts made with the probate court, by McDaniel as his administrator: and for this cause, as well as upon other grounds, the settlement was impeached for fraud, by the bill, and set aside by the court below; and in the decree against Mrs. Finn and her children, they were charged with the value of *Amos*, hire, interest, etc.

The bill charges that before the death of Crosby, Finn paid an execution against Crosby, with the money of Crosby, and afterwards, by coercion and without consideration, obtained a bill of sale from him for *Amos*. The answers of McDaniel and Mrs. Finn deny that Finn paid the execution with the money of Crosby, or that he obtained the bill of sale without consideration and by coercion; and they allege, on the contrary, that Finn purchased the slave fairly, and paid for him the consideration recited in the bill of sale, etc.

The bill of sale is made an exhibit to the answer of McDaniel, bears date July 6, 1851, and by it Crosby acknowledges that he had received of Finn the sum of $869.39, as the consideration for Amos. It is an absolute bill of sale, with warranty of title, etc.

There was no testimony read upon the hearing to prove that Finn used any coercion, or practiced any fraud upon Crosby to

obtain from him the bill of sale. There were two attesting witnesses to the instrument, (R. R. Conway and George Conway.) Their depositions were not taken, and it was not shown that they were dead, or out of the jurisdiction of the court.

It is to be presumed that they knew something of the circumstances attending the execution of the bill of sale; and if Finn had procured it by force or fraud, it is but reasonable to suppose that their testimony would have conduced to prove that fact. The failure of the complainants to take their depositions, or to account for not doing so, is a circumstance to be considered against them.

The deposition of no witness was taken who professes to have been present when the bill of sale was executed, or to have known the circumstances attending its execution.

Wyatt deposed that he understood from Crosby that Finn paid the execution that was levied upon *Amos* with Crosby's money; but the after declarations of Crosby are worthless to invalidate a sale made, or a bill of sale executed by him. *Gullett and wife vs Lamberton*, 1 *Eng. R.*, 110.

It is true that the depositions of Wyatt and Andrews conduce to prove that Finn may have used the means of Crosby in paying the execution, but there is a want of evidence to prove satisfactorily that there was no other consideration for the bill of sale than the money so paid by Finn. If there was none other, and the money was Crosby's, why, it may be asked, did he execute the bill of sale?

Moreover, the bill of sale being an executed contract, the sufficiency of the consideration could not be questioned, or inquired into by the complainants, who claim to stand in the place of Crosby, except for the purpose of conducing to show that the instrument was procured, as alleged, by coercion and fraud; and we have already stated that the proof fails in this.

The testimony in regard to the matter was too loose and weak to warrant the court below in pronouncing a solemn instrument invalid, and decreeing against Mrs. Finn, etc., for the value of

Amos and his hire, etc., and in this respect the decree must be reformed.

5. The slave *Dick*, it appears, came to the possession of Mrs. Finn, as guardian of her children, under the order of the probate court above referred to, on the first of January, 1856, and she kept and controlled him from that time forward. Upon the affirmation by this court of the judgment of the circuit court (fourth of January, 1858,) pronouncing the will of Crosby invalid, she should have surrendered the slave to Hempstead, as administrator *de bonis non* of Crosby, and paid to him a reasonable hire for his services from the time he came into her possession. In failing to do so, she acted in her own wrong, and is personally responsible for the slave and hire to him as such administrator, and he is entitled to a decree against her for the negro and hire, with a provision that if the property be not surrendered, he recover of her the value thereof as ascertained by the master of the court below.

6. It appears that at the time McDaniel became the administrator of Finn, (May 23, 1854,) he found remaining in specie, and undisposed of by his intestate, besides the slave *Dick*, a negro woman named Nelly, a mule, a sorrel horse, two cows, one yearling, a note on W. & M. Moss, and a note on Brunson, which were of the estate of Crosby, and which, under the order of the probate court, were administered into the estate of Finn by McDaniel.

From the time of the death of Finn, his estate got the benefit of the rents of the real estate of Crosby.

Also, the services of the negro Dick, until he was turned over to Mrs. Finn.

Also, the services of the woman Nelly, until the first of January, 1855, when she was sold by McDaniel, as part of Finn's estate.

These assets, rents, hire, etc., having been administered into the estate of Finn, by McDaniel, as his administrator, it was proper for him to account therefor to Hempstead as administrator

*de bonis non* of Crosby. (*Marlatt vs. Scantland ad. et al.*, 19 *Ark.*, 444;) and a decree should have been rendered against him, as such administrator, for the value thereof. It appears, however, that at the time he answered, he had very nearly administered or distributed all the assets of his intestate which came to his hands, and consequently the court below rendered no decree against him except for costs. From this decree the complainants did not appeal, nor did he, and he is not therefore before this court, and the decree as to him cannot be changed. But inasmuch as the estate of Finn was enhanced by so much of the estate of Crosby as was administered into it by McDaniel, as above shown, and passed, so increased in value, into the hands of his distributees, (the infant appellants,) we think it is but just and equitable to charge the estate distributed to them, with the payment to Hempstead, as administrator *de bonis non* of Crosby, of the value of the assets of Crosby that were so administered into their father's estate by his administrator; and the decree of the court below as to them must be so reformed.

7. A decree might also be rendered against the distributees of Finn, in favor of the complainants, who claim to be the heirs of Crosby (if not barred by the statute of non claim,) for the value of so much of the estate of Crosby as was wasted or converted by Finn, as executor of Crosby, during the time he acted as such, had they proven, as against the infant distributees of Finn, that they were the legal heirs and distributees of Crosby, but in this they failed, as we have above shown. And this relieves us from the necessity of deciding the perplexing question, discussed at great length by counsel, whether the demand against the estate of Finn for the value of the assets appropriated by him to his own use, or wasted in his life time, should have been presented to his administrator, properly authenticated, for allowance, within the time prescribed by the statute of non-claim; or whether the heirs of Crosby might not delay the institution of any proceedings therefor, without prejudice, until after the will of Crosby was finally adjudged to be invalid; and then proceed against the estate of Finn in the hands of his distributees.

8. We have not overlooked the fact that Mrs. Finn and her children rely upon the *statute of limitations* to bar any recovery against them. It is sufficient to say, as to this, that until the will of Crosby was finally adjudged to be invalid, no cause of action accrued to Hempstead, as administrator *de bonis non* of Crosby, to recover the goods of Crosby that remained unadministered by Finn as executor, etc., and this suit was commenced within less than a year thereafter.

The clerk of this court, as master, will take and state an account between the parties, in accordance with this opinion, and a decree will be entered thereon, and certified to the court below, to be executed.

As to the complainants who claim to be the heirs and distributees of Crosby, the bill must be dismissed without prejudice.