## WILLIAMS v. CUBAGE.

1.  ADMINISTRATOR: *Not to be credited with lost notes.*
   The destruction or larceny of notes belonging to an estate, does not entitle the administrator to a credit for them.  They may still be sued upon as lost instruments, and collected.

2.  SAME: *Commissions allowed in circuit court on appeal.*
   Upon appeal in the circuit court from a probate court confirmation of an administrator's account of settlement, he may be allowed commissions, though he credited himself with none in the account, and none were allowed by the probate court.

3.  PRACTICE IN CIRCUIT COURT: *On appeals from probate court.*
   In appeals from the probate court, the circuit court, upon ascertaining the amount due from an administrator to his intestate's estate, should certify it to the probate court, and not render judgment for it in favor of an administrator *de bonis non.*

4.  ADMINISTRATOR DE BONIS NON: *Action against former administrator.*
   An administrator *de bonis non* can not sue a former administrator for waste.

APPEAL from *Montgomery* Circuit Court.
Hon. H. B. STUART, Circuit Judge.

*Williams & Battle,* for appellant:

Error to enter the opinion of the former judge as the judgment of the court, whilst another judge was presiding. 4 *Green (Iowa).*

This court, without declaration of law being made below, may look into the bill of exceptions to see if the evidence sustains the judgment. 33 *Ark.,* 651.

Administrators liable only for ordinary care. The exceptions to the settlement were erroneously sustained. *Redfield on Law of Wills, vol.* 3, *mar. p.* 394; 44 *Mo.,* 356; 1 *Ire. Ch.,* 92; 3 *Lit. Ky.,* 177.

It devolved upon the exceptors to show how much of the choses in action was lost by want of due care and diligence on Williams' part. 37 *Ala.,* 268.

Judgment should have been for personal property which the administrator had received; and assets remaining in specie, should have been ordered to be turned over to his successor. *Gantt's Digest, sec.* 44.

See, also, 32 *Ark.,* 154, and 12 *Ark.,* 399, on the whole case.

Administrator *de bonis non* can not recover for waste or loss. *Gantt's Digest, sec.* 191; 24 *Ark.,* 117; *Oliver, adm'r, v. Rottaken, adm'r,* 34 *Ark.,* 144.

*J. S. Witherspoon,* same side:

Case should have been remanded to probate court for final settlement, and allowances to which appellant was entitled. 17 *Ark.,* 126; 20 *Ark.,* 227.

The appellant's settlement with the administrator *de bonis non,* approved by the court, is conclusive.

ENGLISH, C. J.   It appears, from the transcript in this case, that on the eleventh of January, 1867, Thomas Williams filed his account for final settlement as administrator of the estate of Nathan Webb, deceased, in the probate court of Montgomery county.

It seems that on the sixth of January, 1869, exceptions to the account were filed, but what, or by whom, does not appear.

On the eighth of April, 1870, exceptions to the account were filed on behalf of Charles G. Peshall, public administrator of the estate, and the guardian of the minor heirs of deceased.

On the seventh of January, 1876, the exceptions were heard, the account confirmed, and Williams, as former administrator, ordered to turn over to the public administrator, all of the assets of the estate in his hands.

On the same day, the record states, Williams presented to the court the receipt of Charles G. Peshall, public administrator of said estate, in full for all assets in his hands belonging to the estate, and an order was made releasing him from further liability as administrator, and that a quietus be issued to him.

On the eighteenth of July, 1876, W. C. Adams, administrator *de bonis non* of the estate, obtained an appeal to the circuit court from the order of the probate court confirming the account of Williams.

In the circuit court, after a motion to dismiss the appeal was overruled, the account and exceptions to it were referred to an auditor to take testimony, re-state the account, etc.

At the February term, 1878, it was made to appear to the court, that W. C. Adams had resigned his administration, and that the probate court had appointed W. R. Cubage

administrator *de bonis non* of the estate; and it was ordered that he, as such, be made plaintiff in the suit.

The auditor reported depositions taken by him, and was discharged.

At the August term, 1878, the matter was submitted to the court upon the probate transcript, depositions, etc., and taken under advisement.

At the same term the following entry was made:

"Come the parties by their attorneys, and it appearing that there is not time for the judge of this court to examine and decide this cause at this term, it is agreed between the parties that the Hon. L. J. JOYNER shall take the papers and decide said cause in vacation; and that he write out in full his decision, and the same is to be entered as the judgment of the court at the next term, whether said JOYNER shall be judge or not, subject to exceptions on the part of either party, and reserving to either party the right to appeal from said decision, etc., to which time this cause is continued."

At the February term, 1879, the Hon. H. B. STUART presiding, he having succeeded Hon. L. J. JOYNER in the office of judge of the circuit, Judge JOYNER's written decision was filed in the cause in which he sustained some of the exceptions taken to the account of Williams, overruled others, and re-stated the account, showing that he was indebted to the estate in a balance of $550.12.

For this sum the court rendered a personal judgment against Williams in favor of W. R. Cubage as administrator *de bonis non* of the estate of Nathan Webb, deceased. Williams filed a motion for a new trial, which was overruled, and he took a bill of exceptions and appealed.

I. We shall treat the case as if the judge presiding when the final judgment was rendered, adopted the views of the former judge and caused the judgment to be entered ac-

cordingly as the judgment of the court, and not as the judgment of one who had ceased to be a judge.

This is unlike the case of *Winchester v. Ayres, 4 Green (Iowa), 104*, cited by counsel for appellant, where the cause was, by agreement of parties, submitted to a person other than the judge of the court, who rendered the judgment, and signed the bill of exceptions.

II. There were nine exceptions to appellant's account filed for settlement, and it is proper to consider only such as were sustained.

The first and second exceptions were overruled. The third, which was sustained, relates to rent corn. In the account appellant charges himself with:

Amount of rent corn received from H. B. Greenwood for the year 1863, 200 bushels, @ $1...... $200 00
Amount of rent corn received from Mr. Biddy for same year, 66½ bushels............................. 66 50
And on the other side credits himself with amount of rent corn of Greenwood and James Biddy... 266 50

In a note at the foot of the account, he states, "that the corn for which he has asked credit, in this account, was housed and put in the barn on the place belonging to said Nathan Webb, deceased, and left in the care of one C. G. Walker, who sold said corn and converted the proceeds to his own use, as said administrator has been informed and believed."

The depositions taken before the auditor relating to corn are vague. The widow of Nathan Webb testified that she thought there were about 600 or 700 bushels of corn on hand belonging to the estate, all of which was sold by appellant as administrator at the sale of the personal property, on the sixth of February, 1863. That persons who said they purchased corn at the sale applied for it, and did not get it.

Appellant testified that the rent corn for which he claimed credit, was used by scouts of the two armies during the war.

Another witness (Saylors) testified that he knew that scouts belonging to the southern army hauled three loads of corn from the Webb farm some time in the winter of 1863-4. That Mrs. Webb objected to their taking of the corn, and said that there had been so much corn taken by the scouts that she would not have enough corn to make bread.

This is the substance of all the evidence about corn.

Appellant charged himself with eighty bushels of rent corn received of Andy House, and sold at $1 per bushel, for which he did not claim credit.

The exception under consideration did not relate to the corn spoken of by the widow of Webb as being on hand, and sold by appellant at the sale sixth of February, 1863, but to the rent corn received by him of Greenwood and Biddy, for the year 1863, which must have been produced after the sale.

His statement about this corn at the foot of his account, and his statement in his deposition, are contradictory, and unexplained.

Had he stated in the outset that the corn was taken by army scouts, and repeated it in his deposition, it would have been probable.

Whether the three loads of corn referred to by the witness, Saylors, as having been taken by southern scouts was part of the rent corn in question, or corn belonging to the widow of Webb, does not appear. She was not interrogated on the subject.

The court below, sitting in place of a jury, refused to allow appellant credit for the rent corn in question, as not suffi-

ciently accounted for, and under the established rule we will not disturb the finding.

III.   The further exception was to a credit of $397.62, **1. ADMINIS-TRATOR:** which appellant gave himself for choses in action claimed **Not to be credited** to have been lost, and the exception was sustained. **with lost notes.**

At the foot of the account appellant stated that the choses in action, or notes, for which he claimed this credit were placed by him in the hands of James A. Stall, in his lifetime, for safe-keeping, and that said notes or choses in action, were never returned to him by said Stall or his legal representatives, wherefore he claimed credit for them.

In his deposition he stated that the notes belonging to the estate, for which he had given himself the above credit, were left with James A. Stall for safe-keeping, and were afterwards lost.   That he was compelled, on account of *jayhawkers*, to leave the county, and sent those notes, together with three notes of his own, by his son, to Stall for safe-keeping, and Stall afterwards informed him that the notes were all destroyed by federal troops.   That he knew that the store of Stall was burned by soldiers.

There is no evidence that the makers of the notes were insolvent, or that appellant made any effort to collect them. The notes were but evidences of debts, and their loss or destruction did not extinguish the debts which they represented.   They might have been sued upon as lost notes, and collected, if the makers were solvent, and the notes not barred by limitation.

Appellant, under the circumstances, was not to blame for the loss or destruction of the notes, but being chargeable with them, to entitle him to the credit claimed for them, he should have shown that they were worthless, or that he had made reasonable efforts to collect the debts represented by the lost notes, and failed.

This exception was properly sustained.

IV. The fifth exception was overruled.

The sixth was that appellant had failed to charge himself with a mule and horse, worth $300, belonging to the estate, and converted them to his own use. This exception was overruled as to the mule, and sustained as to the horse, which was valued at $200.

As to the horse, appellant testified that he purchased it of Webb for $200, which he paid him at the time, in confederate money, and which Webb deposited with him for safe-keeping when he went into the army.

This testimony was not objected to as incompetent, because it related to a transaction between appellant and deceased, who could no longer speak for himself. But treating it as incompetent, the only evidence to sustain the exception as to the horse, was that of John Maybury, which was hearsay; that is, he testified as to what Webb told him in his lifetime about the horse, when it does not appear that appellant was present.

The exception as to the horse was not sustained by any legal evidence, and should have been overruled.

V. The seventh exception was sustained for fifty bushels of wheat, valued at $50.

The widow of Webb testified that there were about 100 bushels of wheat on hand, belonging to the estate, at the time of his death, a part of which was purchased by Thomas L. Martin. She did not remember whether the balance was sold or not. She did not know that Martin purchased any wheat of appellant, but he came and hauled away the wheat, and said that he bought it.

Appellant testified that his recollection was that there were but fifty-one or fifty-two bushels of wheat, a part of which was delivered to the widow, and the remainder taken by H. B. Greenwood. That the wheat was threshed after the sale of the personal property of the estate. He had no

Williams v. Cubage.

recollection whether Greenwood ever paid for the wheat or not. They were both lying out, and Greenwood was killed before the close of the war.

Appellant was charged with only fifty bushels of the wheat, and there was some evidence to sustain the seventh exception to that extent.

The ninth and tenth exceptions were overruled.

VI. The further point is made that the account was treated as a final settlement, when it was not intended to be such.

The account purports, on its face, to be for final settlement; but appellant stated, at its foot, that he was entitled to a further credit for amount of money paid out for taxes, both special and direct, and for other expenses of administration, for which he would be able to have receipts and vouchers before the probate court at its next October term.

The account was pending in the probate court for several years for settlement, and finally confirmed as made out. No such receipts and vouchers as were referred to in the above statement, at the foot of the account, appear ever to have been produced.

VII. It was made a further ground of the motion for a new trial, that no commissions were allowed appellant. He credited himself with none in his account, but left the matter of commissions to the probate court; none were allowed him, and he did not appeal. The case was tried *de novo*, however, in the circuit court, and commissions might have been allowed him there, if entitled to any, and may be yet, on the remanding of the cause for a new trial.

2 ——:
Commis-
sions al-
lowed in
circuit
court, on
appeal.

VIII. On ascertaining the balance due from appellant to the estate, it should have been certified to the probate court. It was error to render a judgment in favor of ap-

3. PRACTICE
IN CIRCUIT
COURT:
On appeals
from pro-
bate court.

**4. ADMINIS-
TRATOR DE
BONIS NON:
No action
against for-
mer ad-
ministrator
for waste.** pellee as administrator *de bonis non*, for the amount. An administrator *de bonis non* can not maintain an action for waste against a former administrator. *Finn et al. v. Hempstead, Ad., 24 Ark., 117; Oliver, Ad., v. Rottaken, Ad., 34 Ark., 144.*

Reversed, and remanded for a new trial.