ENGLAND LOAN COMPANY v. CAMPBELL.

Opinion delivered February 2, 1931.

50

*Buzbee, Pugh & Harrison,* for appellant.

*Trieber & Lasley,* for Campbell; *W. P. Strait,* for Laster, appellees.

Smith, J. J. H. Laster died intestate in Pulaski County on July 15, 1923. At the time of his death he owned a large plantation, some personal property, and some city property, and he owed a large amount of money. He was survived by his widow and six adult children and one grandson, a minor, the only child of a deceased daughter.

On August 11, 1923, the England Loan Company, an Arkansas corporation, and Charles E. Laster, the eldest

son, were appointed administrators, and qualified by giving bond, conditioned as required by law, in the sum of $100,000, with the New Amsterdam Casualty Company of New York as surety.

The inventory showed personal property of the value of about $10,000, and the indebtedness against the estate amounted to $167,008.09, of which $31,330 evidenced by unsecured notes and about $6,000 evidenced by open accounts, were probated against the estate. The balance of the indebtedness was secured by mortgages on the plantation.

The loan company and C. E. Laster acted as joint administrators until the death of Laster January 16, 1926, and thereafter the loan company acted as sole administrator until October, 1926, when an order was made by the probate court removing the loan company as administrator and ordering it to make a final settlement of the administration.

At the time of the death of J. H. Laster there was an ungathered crop, in which many tenants were interested, and who themselves owed their landlord various sums of money. The affairs of the estate were in such condition that it was thought advisable to continue the operations in which the intestate had been engaged, but it was realized that the administrator did not have this authority, and that it could not be conferred upon them by the probate court in the manner desired. A plan was therefore devised, whereby the administrators were constituted trustees to continue the intestate's business. This trust agreement was signed by the widow and all the adult heirs except Mrs. Grace Laster Graupner. No one signed for the minor grandson. This agreement provided that the trustees should have all the powers vested in them as administrators, and, in addition, should have plenary power to continue the intestate's business at the risk of the parties executing the trust agreement. Power was given to sell, rent, lease, pledge, mortgage, or hypothecate any and all of the property, real and personal,

for such prices and upon such terms as the trustees thought best and "to continue to operate, at the risk of the trust estate, and not at the risk of said trustees, any agricultural, industrial, or business enterprise which they may receive as a part of said estate." The powers granted were broad enough to authorize all of the subsequent operations of the trustees which they conducted so far as the parties to the trust agreement were concerned.

Under the powers thus conferred the trustees continued the farming operations just as the deceased had done in his lifetime, and very large sums of money were thus lost.

On October 13, 1924, the administrators filed their first settlement covering the period of their administration to July 1, 1924, and this settlement was later approved by the probate court. A second settlement was filed covering the period from July 1, 1924, to December 31, 1924, and this settlement was also approved. After the order removing the loan company as administrator had been made, a final settlement was filed by the loan company, but this was never acted upon or approved.

On October 20, 1926, C. M. Connor was appointed administrator in succession after the removal of the loan company as administrator. Connor took charge of all the personal assets and made an inventory thereof, but he made no attempt whatever to ascertain the balance due by the loan company to the estate, and made no effort to enforce its payment. On June 20, 1927, Connor filed a final settlement of his administration, in which he reported "that, by proper order of this court and the Pulaski Chancery Court, Charles R. Case has been appointed as receiver of said estate on the petition of all the heirs of said estate, and that the receiver is ready to take charge of all the assets of said estate and to give his receipt therefor to the administrator." The heirs had, by a mortgage on their equity of redemption in the plantation, secured money with which to pay all the demands

which had been probated against the estate. It being shown that all the debts which had been probated had been paid, the probate court directed Connor to turn over all the assets in his hands to the receiver, and, upon this being done, the administrator was discharged without having required the loan company to settle its administration and pay over to him the amount it owed the estate.

The third settlement filed by the loan company as administrator upon its removal appears to have been lost without having been acted upon or approved, and no action designed to compel a settlement was taken until July 19, 1929, when Roy D. Campbell was appointed administrator in succession. On September 6, 1929, Campbell filed a petition in the probate court, alleging the facts herein recited, and that the loan company and C. E. Laster had failed to make final settlement of their administration of the estate of J. H. Laster, and it was prayed that citation issue against the administrators and the surety on their bond requiring them to make settlement.

Citation issued, and separate responses and demurrers were filed by the loan company and its trustee in bankruptcy, by the executrix of the estate of C. E. Laster, and by the surety on the administrators' bond, which raised the issue hereinafter discussed.

The demurrers to the petition of Campbell as administrator in succession were overruled in the probate court, and a hearing was had, which resulted in a finding by the probate court that the original administrators of the Laster estate were indebted to it in the sum of $127,713.98, which, with interest, amounted to $166,399.57, and it was ordered that this sum be paid over to Campbell as administrator in succession. An appeal was duly prosecuted to the circuit court, where the judgment was rendered from which this appeal comes.

There was a stipulation of counsel in the court below reciting as true the following facts: C. E. Laster died

January 12, 1926, and his wife qualified as executrix January 19, 1926, and no claim was made or presented to her or to the probate court for allowance against his estate except this proceeding.

The England Loan Company was adjudged a bankrupt in November, 1926. A trustee in bankruptcy was appointed, and the bankrupt was discharged and the trustee in bankruptcy was discharged, and no claim was ever filed in that proceeding by any representative of the estate of J. H. Laster, or by any of his heirs, based upon the loan company's connection with the estate of J. H. Laster, either as administrator or trustee.

The circuit court held that any claim or demand against the estate of C. E. Laster was barred by the statute of nonclaim, but the discharge of the loan company did not bar the prosecution of this suit against it, and the court charged the loan company as administrator with the following items:

| | | |
|---|---|---|
| (a) | Cash shown by inventory | $ 1,052.43 |
| (b) | Cash on hand, second settlement | 517.42 |
| (c) | One-half of amount shown by inventory to be due decedent by his tenants at his death | 623.48 |
| (d) | Balance of proceeds of $80,000 mortgage on land | 38,600.00 |
| (e) | Proceeds of sale of lots 7 and 8, block 247, Little Rock, less mortgage on said property at the time of sale | 2,500.00 |
| | These items aggregate | $43,293.33 |

And it was ordered that this sum bear interest from October 19, 1926, until paid at six per cent. From this order and judgment the administrator and its surety have appealed, and the administrator in succession has prosecuted a cross-appeal.

It is conceded that a very large loss was sustained by the trustees in their operation of the Laster plantation, but it may also be said that there is not even a suspicion

of any fraud on the part of the loan company or C. E. Laster, acting either as administrators or as trustees. They undertook, as trustees, to operate the plantation, and they did this only because they were without authority to do so as administrators.

It is first very earnestly insisted that the present administrator in succession is without authority to sue his predecessor for an accounting, for the reason that an intervening administration has been had, and that administrator has made final settlement of his administration and has been discharged.

In the case of *Beckett* v. *Whittington,* 92 Ark. 230, 122 S. W. 633, it was held that, where the probate court confirms the final settlement of the administrator and closes the administration, it is a conclusive finding that all the assets of the estate have been reported and administered, and that all matters of the accounting have been fully and finally made, and that the jurisdiction of the probate court over the estate is at an end. Other cases there cited were to the same effect, but this Beckett case gives the reasons for the rule stated. These are that the probate courts are superior courts, and that the orders of these courts are judgments and are final and conclusive, like the judgments of other superior courts; that the final settlement is the last accounting of the assets of the estate, and, in conjunction with the prior settlements, presents the issues that are to be determined by the probate court when it renders its judgment thereon, these issues being in conjunction with the previous settlements, "all assets of the estate have been duly reported and accounted for; that all the assets of the estate have been duly administered. And when the probate court confirms the final settlement and closes the administration, it finds that all the assets have been reported and administered, and that all matters of the accounting have been fully and finally made, and that the jurisdiction of the probate court over the estate is at an end. And such judgment is conclusive of these findings."

It was there further said that "if, through fraud, accident or mistake, any property of said estate has not been actually reported, accounted for or actually administered, a chancery court has jurisdiction to investigate such charge and to set aside such judgment confirming the final settlement closing the administration. When that is done, the chancery court will remand the administration, if deemed necessary to the probate court to be proceeded with. (Citing cases). But, until such judgment confirming the final settlement is set aside by the chancery court, the probate court has no further jurisdiction over the estate. And it cannot, therefore, after confirmation of the final settlement and the judgment closing the administration, appoint an administrator in succession, unless the same shall be set aside by the chancery court. Under such circumstances the order of the probate court appointing an administrator in succession would be a nullity."

The probate practice is well-defined, and has long been settled, and we do not intend to impair the authority of this and other cases to the same effect. But, when the facts herein stated are recalled, it appears that the rule of practice which we have quoted and here reaffirmed has no application. There has never been any final settlement by the original administrators, to become a final judgment of a superior court of record.

The loan company did file a final settlement, but it was never acted upon or approved by the probate court, and there was therefore no order or judgment of the probate court to become final. It is true that Connor, as administrator in succession, did file a final settlement of his administration, and that this settlement was approved and he was discharged as administrator, but it is also true that Connor did not require his predecessor to account to him, as he should have done, and that his settlement covered only the assets which had actually come into his hands, and he referred not at all to the assets which should have been accounted for to him by the loan

company in its final settlement, but were not. *Beckett* v. *Whittington, supra,* does not apply, because the final settlement of Connor, in conjunction with the previous settlements of the loan company, did not present the issue whether all the assets of the estate had been fully reported and accounted for. It could not have done so, for the last settlement of the loan company had not then been, nor has it yet been, approved.

It follows, therefore, that, so far as the loan company and C. E. Laster are concerned, the settlement of their administration is just where it was when Connor was appointed, because he did not require them to account to him, as he should have done. That duty on the part of the administrator in succession remained undischarged until the institution of this proceeding, and we think §§ 44 and 45, C. & M. Digest, afford full authority for this proceeding. These sections read as follows:

"Section 44. The preceding executor or administrator shall account for and turn over to such executor or administrator in succession all money and property administered or unadministered remaining in his hands and not before accounted for; and it shall be the duty of the executor or administrator in succession to compel his predecessor in office, or, if he be dead, his personal representative, to account for and pay over all money and property administered or unadministered remaining in the hands of his predecessor in office, and for this purpose he may cause such former executor or administrator, or his personal representative, to be notified to appear in the probate court and make settlement.

"Section 45. If the sum found due upon settlement is not paid, the executor or administrator in succession shall sue the former executor or administrator and his bondsmen therefor, or any of them, or if such former executor or administrator be dead, he may sue his personal representatives and bondsmen, or any of them, and shall recover the full sum due, with interest and costs."

Campbell is now undertaking to compel his predecessors to make settlement of their account, and that is the sole purpose of the proceeding. Connor should have done this, but his failure to do so did not and does not deprive the probate court of its jurisdiction to compel the original administrators to settle, and the court has proceeded in the manner provided by law to accomplish that result. The statutes quoted as construed in the case of *Wilson* v. *Hinton*, 63 Ark. 145, 38 S. W. 338, not only give Campbell, as administrator in succession, authority to require the loan company to make settlement of its administration, but requires him also to compel C. E. Laster's personal representative to make settlement of his administration.

We think the court properly held that the discharge of the loan company in bankruptcy did not absolve its liability to the Laster estate, for the reason that the bankruptcy act specifically provides that a discharge does not release a bankrupt from a liability "created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity." Section 35, title 11, United States Code Annotated.

An administrator acts in a fiduciary capacity, and, while no fraud or embezzlement is charged, the failure to account and pay over to his successor is a defalcation of an officer acting in a trust capacity within the meaning of the statutes quoted. It was so expressly held in the case of *Morris* v. *Covey*, 104 Ark. 226, 148 S. W. 257.

We are of the opinion that the court was in error in holding that the cause of action against the estate of C. E. Laster was barred by the statute of nonclaim. In the case of *Statham* v. *Brooke*, 140 Ark. 107, 215 S. W. 739, it was held that an administrator in succession must proceed in the probate court against the former executor or administrator for a settlement or accounting, and must obtain an order to pay over the sum found due to him before he can sue the bondsmen of the former executor or administrator, and that it is the failure to pay over to the administrator in succession which constitutes a breach

of the executor's or administrator's bond and fixes liability on the bondsmen. A number of cases to this effect are cited in the Statham case, *supra*. Until the institution of this proceeding there had been no final settlement of the account of C. E. Laster as administrator. There was no ascertained demand which could be presented to his administrator, and, therefore, the statute of nonclaim did not apply.

We have said that the circuit court, on the appeal from the order of the probate court, found that the administrators were indebted to the estate in the sum of $43,293.33, and that an appeal and a cross-appeal have been prosecuted from that judgment.

This opinion would be almost interminable if we were to discuss the numerous items which the administrator in succession seeks to charge against his predecessors, but we find it unnecessary to do so, for the reason that practically all these items relate to the management of the Laster estate by the trustees.

As we have said, the trust agreement was entered into for the reason that the administrators did not have authority to continue Mr. Laster's business as the parties desired and as was subsequently done, and the business was conducted by the trustees, and not by the administrators. The circuit court recognized this fact and, therefore, charged the administrators with only such money as it found they had received as administrators and for which they had not accounted.

Items (a) and (b) are of this class and we think were properly charged against the administrators. Item (c) relates to accounts of the tenants and is a part of the business of which the trustees took charge and we think, therefore, should not be charged against the administrators. We think item (d) is a proper charge. Under the orders and direction of the probate court the administrators borrowed $80,000 for the purpose of paying a mortgage on the lands and the probated demands. The mortgage with interest was paid, but the balance,

amounting to $38,600, was not used for the purpose for which it was borrowed, and the probated unsecured demands were not paid, as it was intended they should be, and the administrators turned the money over to themselves as trustees and used it for purposes connected with the trust. This action was unauthorized, and the administrators should therefore be charged with this item. We think item (e) is not a proper charge. The facts in regard to this item are as follows. The intestate owned two lots, upon which there was a mortgage for $5,000. The administrators negotiated a sale of the lots for $7,500, of which amount the purchasers paid $500 as earnest money. The administrators were under the impression that the lots had to be sold for cash, and, anticipating that the sale would be completed, they reported a sale for cash, which report of sale was approved by the probate court. The purchaser made no payment in addition to the $500, but forfeited this payment and later reconveyed the lot to the administrators. Still later the mortgage was foreclosed, and the lots sold for $5,000, which was, of course, $2,500 less than the amount for which the administrators had reported they had sold them. We do not think it equitable to require the administrators to sustain this loss; in fact, there was no loss. The administrators made a report which was incorrect, in that, the sale was not for cash, but no loss was sustained on this account, and there was no bad faith in the transaction. On the contrary, $500 was gained. Item (e) is therefore disallowed.

Upon the cross-appeal we do not allow any of the items claimed, for the reason that they relate to the administration of the trust by the trustees as such.

After striking out items (c) and (e), amounting to $3,123.48, the balance with which the administrators should be charged is $40,169.85.

The circuit court ordered the defendant administrators to pay over to the administrator in succession the sum found to be due, and this ordinarily would be the

proper order to make in regard to the sum with which we find the administrators should be charged, but we do not make that order for the following reasons. Mrs. Graupner, the daughter who did not sign the trust agreement, is the only person interested in the sum to be recovered from the administrators and their surety. This fact appears from the stipulation of counsel. All the other heirs, except the minor grandson, joined in the execution of the trust agreement, and thereby authorized the trustees to conduct, at their risk, the business in which the trustees lost much money. The three items which we have charged to the original administrators also went into the trust business, and this was done without the consent of Mrs. Graupner or the grandson, and we find nothing in their conduct to estop them from insisting that the administrator in succession be allowed to recover. It further appears, however, that the guardian of the grandchild has, under the authority of the probate court, made a full and what appears to be a fair, settlement of any interest he may have in the sum recovered, so that, of all the heirs, Mrs. Graupner alone is interested in the sum sought to be recovered against the original administrators.

We see no reason, therefore, why the administrators should be required to pay over a sum which no one would have the right to claim and appropriate, and as Mrs. Graupner is one of seven heirs, it is ordered that there be paid over to the administrator in succession only one-seventh of the amount for which the original administrators are herein held liable. As thus modified the judgment of the court below is affirmed, and the cause will be remanded to the circuit court with directions to certify it to the probate court, for enforcement.

HART, C. J., dissents.

MEHAFFY and McHANEY, JJ., disqualified and non-participating.

HART, C. J., (dissenting). As I understand the majority opinion, it was necessary to appoint an adminis-

trator in succession before a suit could be maintained against a former administrator for waste or conversion of the assets of the estate in favor of one of the distributees of the estate. This is made manifest by the concluding part of the opinion which holds that Mrs. Graupner, one of the distributees, alone was entitled to recover her share of the proceeds recovered. This was because the debts had been paid by the former administrator, and none of the other distributees had any right to the proceeds except the minor, and he had been settled with.

Under the common law, the extent of the power and authority, as well as the duty of an administrator *de bonis non,* was simply to collect and administer such property and effects of the deceased, not administered by the former representative, as remained *in specie,* and were capable of being ascertained and identified as the specific property or estate represented by him. Hence, it has been held that an administrator *de bonis non* cannot maintain a suit at law, or a bill in chancery, against a former executor or administrator, or his representatives, for effects of the estate wasted or converted by him, though such suit or bill may be brought by creditors, distributees, or legatees. *Finn* v. *Hempstead, Admr.,* 24 Ark. 111; *State* v. *Rottaken,* 34 Ark. 144; *Ludlow* v. *Flournoy,* 34 Ark. 451; *Williams* v. *Cubage,* 36 Ark. 307; and *Stewart* v. *Smiley,* 46 Ark. 373.

This rule of the common law has been changed by statute, and an administrator *de bonis non* or in succession is empowered to call a former administrator to a settlement of his accounts to recover from him for waste and conversion, as well as the assets remaining *in specie* in his hands; and this I understand to be the effect of the decision in *Wilson* v. *Hinton,* 63 Ark. 145, 38 S. W. 338. I do not understand that case to hold that the statute giving an administrator *de bonis non* the right to maintain an action for waste or conversion took away the rights of distributees or legatees to maintain the action where there were no assets unadministered, and all that

remained to be done was to recover a fund alleged to be converted by the original administrator and to pay it to the distributees. If the majority opinion had held that, while the probate records show that there was no real necessity for the appointment of an administrator *de bonis non,* through the adjudication of the probate court, the necessity by making the appointment is conclusive here because this is a collateral attack, as held in *Stewart* v. *Smiley,* 46 Ark. 373, and *Lambert* v. *Tucker,* 83 Ark. 416, 104 S. W. 131, I would have concurred in the result.

It seems to me that it is fairly inferable from *Beckett* v. *Whittington,* 92 Ark. 230, 122 S. W. 633, that the only object of the statute under consideration was to enlarge the powers of the administrator *de bonis non* or in succession, and that it does not and did not intend to take away the right of distributees or legatees to sue an administrator for waste or conversion where no rights of creditors are involved; and no necessity existed for the appointment of such administrator.

This court has uniformly held that where a fund has been recovered in any court from the original executor or administrator, it shall be paid to the administrator *de bonis non* as assets of the estate to be accounted for in due course of administration; and in such cases where there would be necessity for the appointment of an administrator in succession, he would have authority to sue for waste or conversion by the administrator in chief.

But where, as here, it can be ascertained from the records of the probate court that the fund is ready for distribution, there is no need for further administration, and the fund may be recovered by the party entitled to it, and it may be distributed in the court where recovered, unincumbered by the costs and delay of administration in the probate court.