## MORRIS *v.* COVEY.

### Opinion delivered May 20, 1912.

1. APPEAL AND ERROR—INSUFFICIENCY OF ABSTRACT—PRESUMPTION.— Where, on appeal in a chancery suit, the evidence upon a certain issue is not fully abstracted by the appellant, it will be presumed that it sustained the chancellor's finding of facts. (Page 231.)

2. ACKNOWLEDGMENT—MARRIED WOMAN—CONCLUSIVENESS.—An officer's certificate of the acknowledgment of a married woman to a conveyance by her and her husband, when in the statutory form, is conclusive evidence of its contents, in the absence of satisfactory proof of fraud or duress. (Page 232.)

3. HUSBAND AND WIFE—REFORMATION OF HUSBAND'S DEED.—As a married woman can not relinquish her dower save in the manner fixed by the statute, which requires her acknowledgment to the relinquishment, a deed wherein she relinquishes her dower right to property can not be reformed so as to include property omitted from the description by mutual mistake. (Page 233.)

4. BANKRUPTCY—JURISDICTION OF COURT.—Under Bankruptcy Act July 1, 1898, c. 541, 30 Stat. L. 544, authorizing the bankruptcy court to determine the claim of a bankrupt to his exemptions, the jurisdiction of that court is limited to determining the claim of exemptions. (Page 234.)

5. SAME—VALIDITY OF LIEN ON EXEMPT PROPERTY.—As the title of a bankrupt to his exempt property does not pass to the trustee in bankruptcy, the fact that a mortgage including both exempt and non-exempt property was avoided by the bankruptcy court as to the latter class of property did not affect its validity as to the former class. (Page 235.)

6. SAME—DISCHARGE—DEBTS BARRED.—The action of the president of an insolvent bank in depositing fiduciary money in such bank for his own benefit was a wilful misappropriation of such money within the exception in Bankruptcy Act, July 1, 1898, c. 541, section 17, pro-

viding that a discharge in bankruptcy shall release the bankrupt of all provable debts except such as were created by fraud, embezzlement, misappropriation or defalcation, while in a fiduciary capacity. (Page 235.)

Appeal from Benton Chancery Court; *T. Haden Hum-phreys*, Chancellor; affirmed.

*R. F. Forrest,* for appellant.

1. The evidence clearly shows that appellee's attorney occupied toward appellants a relationship of confidence and trust, and his controlling influence is admitted. The burden was on appellee to show the validity of the transaction and that it was not the result of undue influence. 9 Cyc. 410, and cases cited; 9 Cyc. 456, and cases cited; *Id.* 470; 34 Cyc. 1068, and note; 11 Wis. 303; 92 Mo. 250; 46 Mo. 147.

2. Where wrongful advantage is taken of one who is in great mental distress, grief and despair such as to impair his judgment and freedom of action, and thereby the execution of a contract is procured, equity will intervene and cancel the contract. 123 Mo. 1; 1 Story's Eq. Jur. (13 ed.) § § 139, 251; 8 L. R. A. 261, and cases cited; 6 Cyc. 353; 85 Ark. 370; 38 Ark. 428; 2 Pomeroy, Eq. Jur., (3 ed.) § 951.

3. Undue influence may be shown by facts and circumstances from which it may be inferred as well as by direct proof. 197 Mo. 68.

4. Pressure, whether acting on the fears or hopes, if so exerted as to overpower the volition without convincing the judgment, is a species of restraint under which no valid will or deed can be made. A grantor's contract or conveyance must be the offspring of his own volition. 92 Mo. 250; 13 Cyc. 587; Schouler on Wills (2 ed.), § 242.

5. The courts will closely scrutinize all transactions between an attorney and client, because of the confidential and fiduciary relations between them and the influence the attorney has over the client. 4 Cyc. 960. On account of this relationship, which had existed for twenty-five years between appellant and appellees' attorney until the filing of this suit, and his knowledge that appellant was relying on him for advice at the time he called on appellant on August 10, 1910, it was his duty to exercise toward appellant the utmost good faith and to disclose to him all information in his possession

as to the material facts about which appellant was consulting and upon which he was about to act. 78 Ark. 87; Enc. of Evidence 345-358, and cases cited; 73 Ark. 580; 38 Ark. 438; 54 Ark. 627; 23 Ark. 622; 33 Ark. 575; 49 Ark. 242.

6. The acknowledgment of the mortgage is not in accordance with the statute, the proof showing that the signatures of the husband and wife were procured, not separately and apart, as required by statute, and only after long persuasion, the wife at the time protesting and objecting. This case differs from *Bell* v. *Castleberry*, 96 Ark. 566, in that the regularity of the certificate in this case is overcome by the testimony of the notary himself. 38 Ark. 377; 41 Ark. 421; 45 Ark. 117; 149 N. Y. 71.

7. No grounds for reformation are shown. The rule that a contract prepared by a party to it and for his exclusive benefit will be construed as unfavorably against him as its terms will permit applies here. 90 Ark. 92; 73 Ark. 339.

To justify reformation on the ground of mistake, the proof must be clear, unequivocal and convincing, not only that there was a mistake, but also that it was mutual, and that the deed as executed did not express the contract as understood by either. Parol evidence alone is not sufficient, and the witnesses must be disinterested. 71 Ark. 615; 46 Ark. 107; 50 Ark. 179; Bishop on Contracts, § 708; 2 Pomeroy, Eq. Jur., § 857.

The powers of married women were not enlarged by the statute. Kirby's Dig., § 5209; 66 Ark. 437.

8. Appellees' cause of action should have been dismissed as *res judicata*, the State laws having been superseded by the bankruptcy act of Congress. 92 Fed. 135; 45 L. R. A. 186-7; 5 Cyc. 240, 241, and cases cited; 97 Ark. 513; 145 Fed. 466; 115 Fed. 906; 116 Fed. 530; 108 Fed. 591.

9. Appellant's demurrer to the interplea should have been sustained. Remington on Bankruptcy, § § 2469, 2670; 102 Fed. 731; 128 Fed. 971; 96 Fed. 594; Sec. 17, Bankrupt Act; Collier on Bankruptcy, (8 ed.) 308, 331; 88 Ark. 519; 5 Cyc. 240-41; 97 Ark. 513; 116 Fed. 530; 115 Fed. 906.

*Rice & Dickson* and *McGill & Lindsey*, for appellees.

1. The acknowledgment certificate of the notary being regular on its face, the recitals therein will be taken as conclu-

sive, in the absence of fraud or duress. The burden was on Mrs. Morris to prove fraud or duress, and to establish either the evidence must be clear, cogent and convincing. 38 Ark. 377; 41 Ark. 421; 45 Ark. 117; 96 Ark. 565; 89 Ky. 508; 12 S. W. 947. It was not necessary that she should be in a different room from her husband when her acknowledgment was taken. 41 Ark. 421.

2. There was no error in reforming the mortgage as against the husband. It should have been reformed as against the wife. It is only when a conveyance is purely voluntary, and founded on no valuable or meritorious consideration, that equity refuses to reform as against the grantors. 86 Ark. 446; 80 Ark. 458; 24 Am. & Eng. Enc. of L. 653, and note 9; 34 Cyc. 929; 6 Pomeroy's Eq. Jur., § § 679, 681; 61 Ark. 123; 72 Ark. 534; 65 Am. St. Rep. 517, 521; 117 Am. St. Rep. 244, 96 Ark. 564; 123 Ill. 403; 5 Am. St. Rep. 526; 112 Cal. 345, 53 Am. St. Rep. 216; 75 Ala. 394, 51 Am. St. Rep. 454; 6 Idaho, 87, 96 Am. St. Rep. 256; 43 Fla. 54, 99 Am. St. Rep. 108; 65 Am. St. Rep. 511-514.

3. The lien of the mortgage is prior to the lien of the attachment and judgment of the intervener, and the court properly so found. 33 Ark. 72; 61 Ark. 123; 6 Pomeroy's Eq. Jur., 681.

4. The adjudication of R. S. Morris as a bankrupt did not affect the lien or enforcement of the mortgage upon the property set apart to him as exempt as a homestead. The bankrupt act does not affect the allowance to bankrupts of the exemptions prescribed by State laws. Bankrupt Act of 1898, § 6; 1 Remington on Bankruptcy, § 1025; 3 *Id.* § 1292; *Id.* § 1100; *Id.* § § 2668, 2673; 116 Ga. 811.

McCULLOCH, C. J. This is an action instituted in the chancery court of Benton County by J. D. Covey, as receiver of the Bank of Siloam, a banking corporation formerly located and doing business at Siloam Springs, Arkansas, against R. S. Morris and his wife, V. L. Morris, to obtain a reformation and foreclosure of a mortgage executed to him by the defendants on August 13, 1910, on certain real estate in the city of Siloam Springs which now constitutes the homestead of R. S. Morris.

T. C. Churchill, as administrator of the estate of Joseph Rutherford, deceased, was permitted to intervene for the purpose of enforcing an attachment lien on the same property.

Defendant, R. S. Morris, was president of the Bank of Siloam, and had active charge and control of its affairs. The bank became grossly insolvent, and on August 7, 1910, was placed in the hands of a receiver by the chancery court of Benton County, plaintiff, J. D. Covey, being appointed as receiver. R. S. Morris was found to be largely indebted to the bank, and on August 13, 1910, he executed to the plaintiff as receiver the mortgage in controversy, which, in addition to other tracts and lots of real estate in Benton County, covered parts of certain lots in the city of Siloam Springs known as the Morris Hotel property, which included the hotel building property and some stores and the bank building. A ten-foot strip off one side of the property was omitted from the mortgage, and this is alleged to have occurred by mistake, and reformation was sought so as to include that strip in the mortgage according to the real intention of the parties. Mrs. Morris joined in the execution of the mortgage, and duly acknowledged the same before a notary public. The amount of the mortgage, with interest up to the date of final decree in this case, was, as found by the chancellor, the sum of $83,230.92, and no question is raised here as to the correctness of that finding. Shortly after the execution of the mortgage defendants moved to the hotel and occupied the same as a homestead.

On October 18, 1910, one of the creditors of R. S. Morris filed a petition to adjudge him a bankrupt in the United States District Court for the Western District of Arkansas at Fort Smith, and he was duly adjudged to be a bankrupt. The bankruptcy court, in an appropriate proceeding for that purpose, cancelled the mortgage executed to appellee Covey as an illegal preference, so far as it covered the property of the bankrupt not exempt, and entered a decree to that effect, and relinquished jurisdiction as to the exempt property of the bankrupt, namely, the homestead in the city of Siloam Springs which is now the subject of this controversy. It should be mentioned, though not material, that the complaint in this case was filed on October 25, 1910, which was before the date of the aforementioned decree in the Federal court.

R. S. Morris was formerly executor of the will of J. R. Rutherford, deceased, and, after having filed his settlement account showing property in his hands to the amount of $4,718.49, an order was made on him to pay it over to his successor, the intervener Churchill, who was appointed administrator in succession with the will annexed; and on March 29, 1911, the intervener commenced an action against R. S. Morris in the circuit court of Benton County to recover said sum of money, and caused an order of general attachment to be issued and levied upon the homestead property of R. S. Morris now in controversy. He bases his claim to subject said property to the payment of his debt on the exception in the Constitutional provision, relating to homesteads, as against executors, administrators, guardians, etc., for moneys collected by them. Constitution of 1874, art. 9, § 3. The intervention in this case is for the purpose of enforcing the lien on the exempt property claimed to have accrued by reason of the attachment.

The chancellor rendered a decree in favor of plaintiff Covey, reforming the mortgage except as to the inchoate dower right of Mrs. Morris, and decreed a foreclosure of the mortgage as reformed. The court also rendered a decree in favor of the intervener, declaring a lien for a certain portion of his claim, which will be referred to later, subject, however, to the mortgage lien of plaintiff Covey.

The defendants appealed, and the plaintiff Covey cross appealed from that part of the decree denying reformation as to the relinquishment of the dower right of Mrs. Morris.

The principal defense put forward by the defendants is that R. S. Morris was incapacitated mentally from executing the mortgage, and that he was induced to execute same by false representations and deception of the plaintiff and the latter's attorney, who had formerly acted as defendant's attorney. It is alleged that said attorney was appointed to represent the receiver in the management of the estate at the solicitation of defendant R. S. Morris, that he agreed to act for the protection of the interests of Morris, and that the latter at the time of the execution of the mortgage was led to believe that the mortgage was executed solely for his protection and to shield him from other creditors. The chancellor

found that the allegations as to mental incapacity of R. S. Morris, and as to false representations and misconduct of the plaintiff Covey and the attorney referred to, were not sustained by the evidence. After a careful consideration of the testimony concerning the conduct of the attorney referred to, we are of the opinion that the charges made against him are wholly unfounded, and that there is nothing in his conduct which is sufficient to form a basis for setting aside the conveyance. Nor is there sufficient testimony as to any misconduct on the part of plaintiff Covey to warrant us in setting aside the mortgage. The testimony as to the mental and physical condition of defendant Morris is not sufficiently abstracted, and counsel for plaintiff insist that the finding of the chancellor on that question should be left undisturbed. It appears from the statements in the briefs that plaintiff introduced numerous witnesses tending to show that the mental and physical condition of defendant Morris was sufficient to establish his capacity to execute the conveyance. The abstract, without containing the testimony of these witnesses, is insufficient to call for a consideration of that question; but assuming, which we must do, that the testimony of each of those witnesses tended to establish sufficient mental capacity on the part of R. S. Morris, that, with the other testimony in the case, places the preponderance of the testimony on that issue on the side of the chancellor's finding, or at least makes it not against the preponderance of the testimony. So, in either view of the matter, it becomes our duty under those circumstances to accept the finding of the chancellor as correct.

Mrs. Morris, in her separate answer, denied that she executed the mortgage freely and voluntarily, but alleged, on the contrary, that she signed it without it being read over to her and without full knowledge and understanding of its contents, and also alleged that she executed the same in the presence of her husband and through fear of her husband's safety. The evidence fails to establish any such duress as would justify the cancellation of the mortgage. She states that she appeared before the officer and executed the instrument; and, the officer's certificate of the acknowledgment being in the form prescribed by the statute, the same is conclusive evi-

dence of its contents, in the absence of satisfactory proof of fraud or duress. *Bell* v. *Castleberry,* 96 Ark. 564.

It is next contended that the court erred in reforming the description in the mortgage so as to include the strip ten feet wide erroneously omitted. The proof is clear that both parties intended to embrace in the mortgage the whole of the lots known as the Morris Hotel property; that the description was taken from a tax receipt, and the error occurred by reason of the erroneous description on the tax receipt. The proof fully justified the finding of the chancellor that a mutual mistake had been made, and the only question of law presented is whether or not the chancellor erred in refusing to reform the instrument as against the wife's inchoate dower right.

In the case of *Sledge & Norfleet Co.* v. *Craig,* 87 Ark. 371, we held that a conveyance of a homestead could be reformed by decree of the chancery court so as to correct an imperfect description. The act of March 18, 1887, providing that no conveyance affecting the homestead of any married man shall be valid "unless his wife joins in the execution of such instrument and acknowledges the same," does not vest any additional interest in the wife. It merely imposes a limitation on the husband's power to alienate the same so long as the property remains the homestead. *Sidway* v. *Lawson,* 58 Ark. 117. In *Sledge & Norfleet Co.* v. *Craig, supra,* which involved the question of the sufficiency of the wife's acknowledgment and also the right to reform a mortgage on the homestead, we said: "The right to a reformation of the instrument rests upon established principles of equity: and when the defective certificate of acknowledgment was cured by the statute, these principles came into operation as if no defect had ever existed." The right to reform an instrument so as to enlarge the wife's relinquishment of dower is controlled by different principles. The wife can relinquish her dower only in the method provided by the statute. Prior to the enactment of the statute in this State impowering a married woman to convey her property the same as if she were a *feme sole,* it was held by this court that a court of equity could not reform the deed of a married woman. *Holland* v. *Moon,* 39 Ark. 124; *Bowden* v. *Bland,* 53 Ark. 53. But this court has held since the enactment of such statute that a married woman's conveyance

can be reformed. *Mills* v. *Driver*, 72 Ark. 534. It necessarily results from the application of the principles there announced that a deed or other instrument executed by a married woman relinquishing her dower can not be reformed, for the reason that she was entirely without power to relinquish dower except in the manner pointed out by the statute. We conclude, therefore, that the chancellor was right, both in reforming the deed as to defendant R. S. Morris and in refusing to reform it so far as it affected the dower rights of his wife, V. L. Morris.

It is next argued that the decree of the Federal court cancelling the mortgage as an illegal preference was an adverse adjudication of plaintiff's right to redeem the mortgage, and that the chancery court had no jurisdiction to entertain the suit to foreclose the mortgage executed by an adjudged bankrupt. It has already been stated that the bankruptcy court, after determining the claim of exemptions, relinquished further jurisdiction over the property. The Federal statute authorizes the bankruptcy court to determine the claim of the bankrupt to his exemptions. 1 Loveland on Bankruptcy, § 428; *Lucius* v. *Cawthon-Coleman Co.*, 196 U. S. 149. But the jurisdiction of that court is limited to determining the claim of exemptions. When property has been designated and set apart for the bankrupt as exempt, it does not pass to the trustee; therefore, the bankruptcy court has no further jurisdiction concerning it. *Lockwood* v. *Exchange Bank*, 190 U. S. 294. A valid lien upon property of a bankrupt which is exempt under the State law is not affected by bankruptcy proceedings, and will not be set aside as an illegal preference under the Federal bankruptcy law. 1 Loveland on Bankruptcy, § 427; *Lockwood* v. *Exchange Bank, supra.* "The reason," says Mr. Loveland, "is that the title to exempt property does not pass to the trustee. It remains in the bankrupt, subject to such incumbrances as he has lawfully put upon it. The fact that the exempt property is subject to the claims of certain creditors does not make it assets to be administered in bankruptcy." The decisions on this question were all rendered, so far as we know, prior to the amendment in 1910, but it is not thought that the amendment to section 67 of the Federal statute changes the law in that respect.

It has also been decided that "a mortgage including both exempt and nonexempt property may remain a valid mortgage as to the exempt property, although voidable as a preference or fraudulent transfer as to the nonexempt property." 1 Loveland on Bankruptcy, § 427; In re *Tollett,* 106 Fed. 866; In re *Bailey,* 176 Fed. 990; In re *Eash,* 157 Fed. 996; *Vitzthum* v. *Large,* 162 Fed. 685.

It necessarily follows that, since the Federal court has no further jurisdiction after having set apart the exemptions, the jurisdiction of the State court was complete for the purpose of foreclosing a valid lien, which was not impaired by the bankruptcy proceedings. The mortgage in controversy, like those referred to in the decisions cited above, contained both exempt and nonexempt property. The Federal court held that the mortgage was void as to the nonexempt property, it being a preference given within four months before the petition in bankruptcy. This did not affect the validity of the mortgage as to the exempt property. This question must not be confused with that of the right of a bankrupt's creditor, who has a lien on property both exempt and nonexempt and surrenders it for the purpose of participating in the general assets of the bankrupt. In such case it has been held, properly we think, by some of the district courts that, after having surrendered the preference for the purpose of participating generally with other creditors in the assets of the bankrupt, the creditor can not reassert his lien on the exempt property. That would be allowing him to assume an inconsistent position. In re *Soper,* 173 Fed. 116. Such is not the case here. Plaintiff is merely attempting to assert a lien on the exempt property which is valid under the laws of this State and is not invalidated by the Federal bankruptcy statute. Our conclusion is that the decree of the chancery court on that branch of the case was correct.

The property was not exempt as against the claim asserted by the intervener, for it is a debt of an executor for money collected by him and, according to the findings of the chancellor, misappropriated. It is insisted that the intervener can not maintain his action for the reason that it is not shown that he proved his claim in the bankruptcy court. This brings up the question whether the intervener's claim is such a provable

debt, within the meaning of the bankruptcy law, as will release the bankrupt. Section 17 of the act provides that "a discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as * * * were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity." The chancellor decreed in favor of the intervener on the ground that it was a debt created by reason of misappropriation of the fund by the bankrupt. Defendant R. S. Morris was executor of the estate of Rutherford and received funds which he deposited in the Bank of Siloam while he was president of that institution and managed and controlled its business. The bank was grossly insolvent at that time, and the proof warranted a finding that that condition was well known to him. We think that the chancellor was warranted in finding the existence of a state of facts which showed that the defendant was using the funds of the estate in such a way as resulted solely to his own benefit as the controlling stockholder in the bank, and that it amounted in law to a wilful misappropriation of the funds. That being true, the Federal statute excepts the debt from the bankrupt's release by reason of his discharge in bankruptcy and the intervener could maintain the action without proving the debt. The demurrer to the interplea was therefore properly overruled, and the decree in favor of the intervener was correct.

Our conclusion is that the decree of the chancellor was correct in its entirety, and the same is affirmed.

Hart, J., concurring.