**ORNDORFF v. STATE ex rel. McGILL et al.**

**No. 3631.**

Court of Civil Appeals of Texas. El Paso.

July 1, 1937.

Rehearing Denied Aug. 12, 1937.

Armstrong & Jaffe, of El Paso, for appellant.

D. E. Mulcahy, Co. Atty., H. L. Sims, Asst. Co. Atty., and S. P. Weisiger, and W. O. Hamilton, all of El Paso, for appellees.

NEALON, Chief Justice.

The State of Texas, by David E. Mulcahy, county attorney of El Paso county, Tex., on the relation of Joseph McGill, county judge of said county, joined by W. W. Hawkins, L. J. Ivey, and J. L. Andreas, county commissioners, on January 9, 1937, instituted a quo warranto proceeding against Seth B. Orndorff and Shanks Carpenter, each of whom claimed to be the duly qualified county commissioner from precinct No. 2 of El Paso county. Defendant Orndorff had received the largest number of votes cast for commissioner of said precinct at the election held in November, 1936. On January 1, 1937, he took his oath of office and filed his official bond, which had theretofore been approved by the commissioners' court, and began acting as commissioner of said precinct. He demanded compensation for his services, but up to the time of trial had received none. Defendant Carpenter likewise claimed the office, upon the ground that he had been elected thereto at the general election in November, 1934, and was entitled to hold over until his successor should be duly qualified; that Seth B. · Orndorff was ineligible to the office, and therefore he (Carpenter) was entitled to the rights, privileges, and emoluments thereof.

The trial court held that appellant was ineligible to said office, and rendered judgment ousting him therefrom. It was adjudged that Shanks Carpenter was entitled to the office until such time as his successor should be appointed by the county judge or elected, and should qualify. From this judgment appellant, Orndorff, appealed.

An agreed statement of facts was filed. From this and from the court's findings of fact it appears that during the years 1923, 1924, and 1925 appellant was the duly elected, qualified, and acting sheriff of El Paso county. In his capacity as sheriff he came into possession of large sums of money paid by the United States government for the safekeeping, care and feeding of federal prisoners who had been incarcerated in the El Paso county jail. The county claimed it was his duty to account for and pay to El Paso county the profits thus arising as excess fees of office. Appellant contested the county's right to said profits, and on May 27, 1926, the district court rendered judgment against him for $67,186.83. The case was brought to this court by appellant by writ of error, on cost bond, and this court, following Binford, Sheriff, v. Harris County, 261 S.W. 535 (writ refused), affirmed the judgment of the trial court. October 26, 1927, the Supreme Court of Texas refused Orndorff's application for writ of error, and early in 1928 the Supreme Court of the United States denied his petition for certiorari. Orndorff v. El Paso County, 276 U.S. 633, 48 S.Ct. 339, 72 L.Ed. 742. The sureties upon his various bonds paid according to their respective liabilities, leaving a balance due El Paso county, which, with interest, on December 31, 1936, amounted to $56,966.13.

Subsequent to the rendition of said judgment appellant filed a voluntary petition in bankruptcy, scheduling said judgment among his liabilities. He was in due time adjudged bankrupt. On September 28, 1935, an order was entered granting him a discharge in bankruptcy. The county had notice of the bankruptcy proceedings.

Appellant has failed to account for and pay said money to El Paso county or any officer or representative of said county, and has obtained no discharge therefor.

Appellee Shanks Carpenter filed a brief in which he prayed that the judgment of the trial court be affirmed.

· Opinion.

Appellees urge a motion to dismiss upon the ground that under rule 7 for the Courts of Civil Appeals, promulgated

by the Supreme Court October 8, 1892, the transcript should have been filed within 20 days after appeal was perfected. The transcript was filed in this case 58 days after judgment was rendered. The motion is overruled. Appeals in quo warranto proceedings are governed by article 6256, Revised Statutes 1925, which is a codification of a statute passed and approved in 1921, which supersedes the rule of court in so far as there is a conflict. Stillman v. Hirsch (Tex.Sup.) 99 S.W.(2d) 270; Brown v. Hooks, 117 Tex. 155, 299 S.W. 228; Golden v. Odiorne, 112 Tex. 544, 249 S.W. 822; State v. Scranton Independent School Dist. (Tex. Com.App.) 285 S.W. 601.

Appellant urges the reversal of the district court's judgment upon the following grounds: That the court erred in holding (1) that the office of county commissioner is within the meaning of article 3, section 20, of the State Constitution; (2) that moneys collected for feeding federal prisoners is public money within the meaning of said provision; (3) that a sheriff is a person "otherwise entrusted with public monies" within the meaning of said section; (4) that the judgment was not barred by the ten-year statute of limitation; (5) that a dormant judgment in a collateral proceeding is evidence of the existence of a debt; (6) that the debt was not discharged by appellant's discharge in bankruptcy.

Section 20 of article 3 of the State Constitution reads as follows: "No person who at any time may have been a collector of taxes, or who may have been otherwise entrusted with public money, shall be eligible to the Legislature, or to any office of profit or trust under the State Government, until he shall have obtained a discharge for the amount of such collections, or for all public moneys with which he may have been entrusted."

Is the office of county commissioner one of profit or trust "under the State Government?" In attempting to answer this question correctly we consider how the office comes into being, the relation of the county to the State, the functions of the commissioners' court and of its members, and these especially with relation to the affairs of the State.

In construing provisions of the Constitution, it must be presumed that the language was carefully selected and made to express the will of the people (Mellinger v. Houston, 68 Tex. 37, 3 S.W. 249; San Antonio v. Berry, 92 Tex. 319, 48 S.W. 496); that words are used in their natural sense (Stockton v. Montgomery, Dallam, Dig. 473; Morton v. Gordon, Dallam, Dig. 396); that as a rule the voters are unlearned in the law, and the construction of the language by the courts should be as the voters at the time of its adoption would reasonably have understood it to be (Brady v. Brooks, 99 Tex. 366, 89 S.W. 1052); "the obvious common sense meaning of the terms, is the one in which they should be understood" (Republic v. Skidmore, 2 Tex. 261); when the meaning is doubtful, that interpretation should be adopted which seems best calculated to promote the public interest, upon the theory that its framers so intended (State v. DeGress, 72 Tex. 242, 11 S.W. 1029).

Bearing in mind these rules, we seek a correct answer to the question just propounded: Is a county commissioner an officer "under the Government of the State?" While it is true that the courts have held that various officers whose spheres of activity are limited to the counties of their residence are not officers "of" the State within the meaning of certain statutes clearly intended to apply only to certain named officers and others whose jurisdiction or field of action is state-wide, it must be borne in mind that there is a marked difference between the meaning of the phrases "under the State Government" and "of the State" or "of the State Government." Counties "are created by the state for the purposes of government. Their functions are political and administrative, and the powers conferred upon them are rather duties imposed than privileges granted." Heigel v. Wichita County, 84 Tex. 392, 19 S.W. 562, 31 Am.St.Rep. 63. This language, quoted from an opinion by Judge Gaines, places counties in a subordinate position, and, therefore, "under the State Government" performing duties imposed by the State. Necessarily, therefore, the members of the commissioners' court, the body charged with the performance of the duties imposed from above, are officers under that superior government which imposes the duties and holds the commissioners responsible for their performance.

The commissioners' court is the creature of the Constitution which provides (article 5, § 1) that "the judicial power of this State shall be vested in one Supreme Court, in Courts of Civil Appeals, in a Court of Criminal Appeals, in District Courts, in County

Courts, in Commissioners Courts, in Courts of Justices of the Peace, and in such other courts as may be provided by law." By section 18 of article 8 of the Constitution the county commissioners' court is constituted a board of equalization, charged with the duty of equalizing, as near as may be, the valuation of all property subject to or rendered for taxation—thus making the State dependent upon the action of the various commissioners' courts for the amount of ad valorem taxes it shall receive. The Constitution fixes the number of commissioners to be elected in each county, as well as their tenure of office. It charges them with the duty of providing courthouses in which the courts of the state shall convene and jails in which offenders against its laws shall be confined. It confides to the Legislature authority to fix the compensation of the commissioners and to regulate their duties in matters about which the Constitution is silent. The Legislature may change county boundaries and may abolish particular counties when the public interest so demands, and the jails and courthouses erected by counties "form a part of the public policy, and are required in each territorial subdivision of the State into county jurisdiction; but they are not exclusively for the use of the citizens comprehended within the county boundaries, but are under the control of the Legislature, open to all others, and for their use." Bass v. Fontleroy, 11 Tex. 698.

Counties and their commissioners' courts are, therefore, not only the creatures of the State Constitution, but they are under the continuous control and domination, within constitutional bounds, of the State Legislature. It follows, necessarily, that though, within the contemplation of certain statutes, a county commissioner may not be an officer "of" the State government, he does hold an office of trust and profit "under the State Government." Nor does the location of the provision under the heading "Legislative Department" preclude its application to the office of county commissioner. Ex parte Lewis, 45 Tex.Cr.R. 1, 73 S. W. 811, 818, 108 Am.St.Rep. 929.

This holding is in harmony with the weight of authority. In no Texas case called to our attention, or which we have been able to find, has the phrase "under the State Government" been defined. We have, therefore, heeded the admonition of Chief Justice Hemphill, expressed in DeCordova v. City of Galveston, 4 Tex. 470: "In attempting to ascertain the intent of the prohibition, we can derive material assistance from the examination of the Constitutions of other States, in which similar restrictions are to be found; and from the decisions of the enlightened tribunals by which such provisions have been considered and expounded."

In Bunting v. Willis, 27 Grat. 144, 21 Am. Rep. 338, the Virginia court held the sheriff to be an officer "under the commonwealth." In People v. Leonard, 73 Cal. 230, 14 P. 853, the California Supreme Court held that a county supervisor, an officer whose duties are like to those of our county commissioners, held an office of profit "under" the State. Of similar import are two Indiana cases: Dailey v. State ex rel. Huffer, 8 Blackf. 329, and Foltz v. Kerlin, 105 Ind. 221, 4 N.E. 439, 5 N.E. 672, 55 Am.Rep. 197. In Mississippi in Shelby v. Alcorn, 36 Miss. 273, 72 Am.Dec. 169, under a provision prohibiting the appointment of a Senator to any civil office "under" the State, which shall have been created during his incumbency, a Senator was held ineligible to the office of levee commissioner of a county. The Missouri Supreme Court held in State ex rel. Davidson v. Caldwell, 310 Mo. 397, 276 S.W. 631, that a constable appointed under legal authority having to perform duties prescribed by law was an officer "under the State." In State v. Erickson, 180 Minn. 246, 230 N.W. 637, the Minnesota court held that a county commissioner held an "office under the state," as did the North Carolina Supreme Court in Harris v. Watson, 201 N.C. 661, 161 S.E. 215, 79 A.L.R. 441. In Missouri directors of school districts have been held to be officers under the State. State ex rel. Worsham v. Ellis (Mo.App.) 11 S.W.(2d) 1095; Id., 329 Mo. 124, 44 S.W.(2d) 129. In Attorney General v. Common Council of City of Detroit, 112 Mich. 145, 70 N.W. 450, 37 L.R.A. 211, it was held that the mayor of Detroit was an officer "under the State" of Michigan, and in State v. Robinson, 101 Minn. 277, 112 N.W. 269, 20 L.R.A.(N.S.) 1127, it was said that "officers of municipal corporations * * * are, in respect to all general laws having force and operating within their municipality, agents of the state." The Supreme Court of Arkansas, in Wood v. Miller, 154 Ark. 318, 242 S.W. 573, held that a municipal judge was an officer "under the State."

Without expressing an opinion as to the status of those holding other offices, we hold

that in Texas a county commissioner is an officer "under the State government" within the meaning of article 3, section 20, of the Texas Constitution.

■ The moneys herein involved were held to be public moneys in Orndorff v. El Paso County (Tex.Civ.App.) 295 S.W. 219. In that case appellant contended that they belonged to him, in which event they would have been private funds. In holding that they belonged to the county, this court, by necessary implication, held them to be public moneys. They should have been paid into the county treasury, and expended only for such public purposes as are permitted by State law. The constitutional provision invoked does not designate the source from which the moneys shall be received. It requires only that they be public moneys. The framers of the Constitution and the voters who adopted it were as much interested in protecting public funds received from one source as those received from another. The prohibition of the section was calculated to promote the prompt and complete accounting for all public funds, as well as to provide a penalty for failure of duty in this respect. Under Orndorff v. El Paso County, supra, and Binford v. Harris County (Tex.Civ.App.) 261 S.W. 535, funds of the character herein involved are fees of office; and under McAskill v. Terrell, 113 Tex. 500, 259 S.W. 914, fees of office are public funds.

■ The contention that a sheriff is not within the description "persons who at any time may have been a collector of taxes or who have been otherwise entrusted with public moneys" is without merit. The language needs no interpreter. It clearly includes every person who may have been intrusted with public money. It was within the knowledge of the framers of the Constitution that vast sums of public money would be entrusted, of necessity, to others than tax collectors; and the language used was broad enough to cover them all, state and county treasurers, and treasurers of other political subdivisions of the State, officers and departments that receive money in behalf of the State and its political subdivisions, sheriffs and others. It was also within their knowledge that sheriffs are ex officio tax collectors in many counties, that when they collect from purchasers at execution sales based on tax judgments and bond forfeitures and when they collect penalties imposed for transgressing the State's laws, they are intrusted with public funds. They knew, too, that in the transaction of the business of the State and its subdivisions it would be necessary to intrust many persons with the temporary custody of public moneys. The language indicates that these contingencies were kept in mind. Sheriffs, as well as tax collectors, are included within the language of the provision.

■ Appellant challenges the following conclusion of law upon the part of the trial court:

"An appeal from the judgment of a District Court, is a continuance of the action. The judgment becomes final only when the appellate court renders its judgment in the cause. Limitation does not run against a judgment during the pendency of an appeal therefrom; nor against the cause of action therein asserted. The enforcement of a judgment, not final, gives the plaintiff only an inchoate right in the fruits of its enforcement.

"The issuance of an execution on a judgment, during the pendency of an appeal therefrom, neither arrests the running of the statute, nor does it set it in motion. The application by analogy of the ten year statute to a judgment, upon which execution had issued, is to the issuance of an execution for the unconditional enforcement of a final judgment. * * * Said judgment is dormant, this 17th day of February, 1937."

The suit against appellant hereinbefore referred to was filed February 17, 1926. May 29, 1926, judgment was rendered against appellant for $67,186.83. October 23, 1926, petition for writ of error was filed by present appellant. The same day a cost bond was filed. April 14, 1927, this court affirmed the judgment of the trial court. Motion for rehearing was filed and was overruled on May 19, 1927. Appellant in due time made application to the Supreme Court of Texas for writ of error. The application was refused October 26, 1927. Appellant and his sureties sought to have the judgment reviewed by the Supreme Court of the United States. The petition for certiorari was denied by that court on March 19, 1928. The mandate of this court was issued March 26, 1928, and filed in the office of the district clerk of El Paso county the same day. June 7, 1926, execution issued, but was by the constable returned unexecuted at the request of plaintiff. July 7, 1926, execution issued reciting the issuance of execution on June 7, 1926. It was returned unexecuted at the request

of plaintiff, the return further reciting that an alias execution issued June 17, 1926, which was returned because appellant's sureties had paid plaintiff's counsel $29,-862.01, before the execution was placed in the hands of the officer.

The quoted conclusion of the trial court is in exact conformity with the opinion of the Commission of Appeals (expressly approved by the Supreme Court) in McDonald v. Ayres, 242 S.W. 192.

Appellant's discharge in bankruptcy did not have the effect of extinguishing his debt to the State. Especially excepted from the debts released by a bankrupt's discharge in bankruptcy are "such as were created by defalcation while acting as an officer or in any fiduciary capacity." Appellant testified that in retaining the money he relied upon an opinion of the Attorney General rendered to the county auditor of El Paso county; that he knew of the pendency of the Binford Case, 261 S.W. 535; that when he learned the effect of the decision in that case he changed his method of handling these moneys and thereafter accounted for and paid into the county all money of this character that he received. The court found as facts: That the Binford Case was decided by the Court of Civil Appeals of the First Supreme Judicial District of Texas, April 1, 1924, motion for rehearing denied April 10, 1924, and writ of error refused by the Supreme Court May 21, 1924; that appellant knew of the filing of said case on or about the time it was filed and wrote to Binford about it, and at that time knew that said case involved the alleged right of a sheriff to retain the profits derived from feeding federal prisoners. Appellant insists that he acted in the honest belief that he was entitled to retain the money, and, therefore, his failure to pay over the same was not a "defalcation" within the meaning of the bankruptcy act. The contention is without merit. There is a defalcation when the person charged with the duty to do so fails to pay over public moneys for which he is accountable. Matter of Butts (D.C.) 120 F. 966; City of Syracuse v. Roscoe, 66 Misc. 317, 123 N.Y.S. 403.

In the case last above cited it was held that the word "defalcation" as used in section 35, title 11, U.S.Code (11 U.S.C.A. § 35), does not necessarily imply any fraud or criminal act upon the part of the person charged; that it has a broader meaning than have the words "fraud," "embezzlement," or "misappropriation," and that a municipal officer failing to pay over moneys for which he is chargeable is guilty of a "defalcation." Perhaps even more to the point is the holding of the Minnesota court in National Surety Company v. Wittich, 185 Minn. 321, 240 N.W. 888, in which it was held that a postmaster was (within the meaning of the Bankruptcy Act) guilty of defalcation for failing to account for receipts coming into his custody, even though the evidence justified the conclusion that he had not personally converted the money but that one of his clerks had purloined it. The Arkansas Supreme Court in applying said provision of the Bankruptcy Act held that a loan company, which acted as an administrator and failed to account and pay over to its successor certain funds of the estate administered, was not discharged from liability, even though no fraud or embezzlement was charged. England Loan Company v. Campbell, 183 Ark. 49, 35 S.W.(2d) 75, 1006, citing Morris v. Covey, 104 Ark. 226, 148 S.W. 257. Other cases in point are Laramore v. McKinzie, 60 Ga. 532; Fine v. Saul, 183 Ga. 309, 188 S.E. 439.

In any event, we think that neither a discharge in bankruptcy, were it intended to affect such a claim, nor the barring of the judgment through the operation of the statutes of limitations, would satisfy the requirement of section 20 of article 3 of the Constitution. That provision disqualifies the candidate until he "shall have obtained a discharge" of "all public moneys with which he may have been entrusted." Bankruptcy laws and statutes of limitation abrogate remedies. The debt is not destroyed. The debt remains a moral obligation, though the law prevents enforcement through court action. This moral obligation is sufficient consideration for a binding promise to pay in the future. Livesay v. First National Bank (Tex.Com. App.) 57 S.W.(2d) 86, 91 A.L.R. 873; Goldfrank, Frank & Co. v. Young, 64 Tex. 432. These statutes do not mitigate the effect of the prohibition of the State against the holding of office by one in default. This denial of privilege is outside the province of congressional action and prohibitive of contrary State legislative action.

All assignments of error are overruled. Judgment is affirmed.