CITIZENS MUTUAL AUTOMOBILE INSURANCE CO.
*v.* GARDNER.

1. INSURANCE—AGENTS—COLLECTION OF PREMIUMS—FIDUCIARIES.
  Premiums collected by an agent for an insurance company are
    received and held by the agent in a fiduciary capacity as such
    an agent acts in a fiduciary capacity (3 Comp. Laws 1929,
    § 12369).

2. BANKRUPTCY—JUDGMENT—NATURE OF DEBT—FORM OF ACTION.
  In determining whether or not collection of a judgment is barred
    by the judgment debtor's discharge in bankruptcy, the con-
    trolling issue is the exact nature of the debt on which such
    judgment was based, not the form of the action in which the
    judgment was obtained (11 USCA, § 35).

3. SAME—JUDGMENT—NATURE OF DEBT—RECORD.
  In determining whether or not collection of a judgment is barred
    by discharge in bankruptcy of judgment debtor the inquiry
    into the nature of the obligation upon which the judgment
    rests is not limited to the judgment but by the record upon which
    the judgment is based (11 USCA, § 35).

4. JUDGMENT—RECORD.
  A judgment is but an adjudication upon a record.

5. BANKRUPTCY—DISCHARGE—JUDGMENT—INSURANCE AGENT—EVI-
DENCE.
  Checks given by insurance agent to company he represented and
    agreement signed by him in which it was stated that he had
    had possession of certain money that had not been delivered
    in accordance with company regulations were evidence of the
    nature of his obligation to the company and where it was
    contained in record upon which judgment was based, collec-
    tion of such judgment was not barred by the debtor's dis-
    charge in bankruptcy (11 USCA, § 35).

6. SAME — FRAUD — EMBEZZLEMENT — MISAPPROPRIATION — DE-
FALCATION—CONSTRUCTION OF STATUTES.
> The terms "fraud," "embezzlement," "misappropriation,"
> and "defalcation," as used in clause characterizing obliga-
> tions of fiduciaries excepted from release by discharge in bank-
> ruptcy are not synonymous and each may be assumed to have
> been used by Congress ·in its ordinary legal significance
> (11 USCA, § 35).

7. SAME—FIDUCIARY—DEFALCATION—DISCHARGE.
> One who, acting in a fiduciary capacity, fails to observe his duty
> to make payment of money coming into his possession in such
> capacity, places himself, by such failure, within the term
> "defalcation," as used in exception to clause releasing bank-
> rupt fiduciary from his provable debts by discharge in bank-
> ruptcy (11 USCA, § 35).

8. SAME—FIDUCIARY—DEFALCATION—CONSTRUCTION OF STATUTES.
> "Defalcation," as term is used in clause of bankruptcy act
> excepting certain debts of fiduciaries from release by dis-
> charge was intended 'to cover defaults other than deliberate
> malversations, and includes a mere deficit resulting from mis-
> conduct and is independent of profit · to the fiduciary
> (11 USCA, § 35).

9. SAME—DEFALCATION—INSURANCE AGENT—FAILURE TO PAY PRE-
MIUMS.
> Failure of insurance agent who received premiums to make pay-
> ment thereof to insurance company pursuant to his duty so to
> do, perpetrated a "defalcation" as he was acting in a fidu-
> ciary capacity, and his debt based thereon was expressly ex-
> cepted· from operation of discharge in bankruptcy (11 USCA,
> § 35).

Appeal from Ingham; Hayden (Charles H.), J. Submitted June 6, 1946. (Docket No. 60, Calendar No. 42,647.) Decided October 7, 1946.

Garnishment proceedings by Citizens Mutual Automobile Insurance Company against Claude Gardner, principal defendant, and Nash-Kelvinator Corporation, garnishee defendant. Motion to dismiss denied. Defendant appeals. Affirmed.

*Claude J. Marshall,* for plaintiff.

*Walter O. Estes,* for defendant.

CARR, J.   Defendant Gardner, hereinafter referred to as the defendant, appeals from an order of the circuit court denying a motion to dismiss garnishment proceedings to enforce a judgment. The motion was based on a discharge in bankruptcy granted to defendant following the judgment. The question at issue is whether the defendant was released from liability on the judgment as a result of the proceeding in the bankruptcy court.

The plaintiff is a Michigan corporation and, for a number of years past, has been engaged in the writing of insurance on motor vehicles. For some time prior to September, 1935, defendant was plaintiff's agent at Williamston, Michigan. In such capacity he wrote insurance for plaintiff and collected premiums, such premiums including money owing to plaintiff and commissions owing to defendant. February 3, 1933, defendant issued a check, payable to plaintiff in the sum of $34.75. February 9th, he issued a second check to plaintiff for $25.64. Apparently these checks did not clear prior to the bank holiday of 1933, nor were they subsequently paid by the bank on which they were drawn. However, November 8, 1937, defendant paid plaintiff the sum of $20, and on March 10, 1938, the further sum of $40, which payments were credited on the checks.

Under date of September 3, 1935, plaintiff and defendant entered into a written agreement reciting in substance that defendant had acted as plaintiff's agent in the sale of insurance with the understanding that all payments should be remitted promptly to plaintiff. Said agreement further set forth that

defendant had not made payments as required, and that there was due and payable to plaintiff, the sum of $463.46, which defendant was unable to pay at the time. Following such recital the contract set forth that defendant would pay plaintiff not less than $20 per month on the account, and that he would endeavor to collect the balance due on insurance that he had sold and pay over all such collections to plaintiff. The concluding paragraph of the agreement read as follows:

"It is understood and agreed that if the party of the first part defaults in the payments in accordance with the aforesaid, that the said party of the second part will be at liberty to proceed with their regular remedy, said party of the first part acknowledging that he has had possession of the money and not delivered it in accordance with the company regulations."

Defendant failed to carry out the agreement of September 3, 1935, and also failed to pay the checks in full. In March, 1939, plaintiff brought suit in assumpsit, the first two counts of the declaration being based on the checks, the third count on the written agreement referred to above, and the fourth count on the common counts in assumpsit. On July 12, 1940, plaintiff recovered a default judgment against defendant in the sum of $591.48, with costs taxed at $24.10. The proofs offered by plaintiff in support of its right to recover established the agency, the obligations relied on as evidence of the debt, and the amount owing by defendant to plaintiff, including interest.

Following the obtaining of the judgment against him, defendant filed his petition in the bankruptcy court, and on September 22, 1943, was discharged from all debts and claims provable under the bankruptcy act, other than debts expressly excepted by

said act from the operation of the discharge. Thereafter, plaintiff instituted garnishment proceedings on the judgment. Defendant moved to dismiss the proceedings claiming that the discharge in bankruptcy was a bar to the enforcement of the judgment. The trial court denied the motion to dismiss on the ground that the debt on which the judgment was based was created by the wrongful conversion of insurance premiums collected by defendant and was not within the operation of the discharge in bankruptcy.

Section 35 of the bankruptcy act (11 USCA, chap. 3, § 35) provides, insofar as material here, that:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as * * * (fourth) were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity."

Plaintiff's claim that defendant received the insurance premiums while acting in a fiduciary capacity is scarcely open to question. 3 Comp. Laws 1929, § 12369 (Stat. Ann. § 24.174), reads in part:

"Any money, substitute for money or thing of value whatsoever, received by any agent, solicitor or broker as premium or return premium, on or under any policy of insurance or application therefor, shall be deemed to have been received by such agent, solicitor or broker in his fiduciary capacity."

Citing this section it was said in *Travelers Insurance Co.* v. *Bishop,* 298 Mich. 600:

"Premiums collected by an agent for an insurance company are received and held by the agent in a fiduciary capacity. The agent who collects and receives such premiums acts in a fiduciary capacity."

See, also, with reference to interpretation of the section in question *Globe & Rutgers Fire Insurance Company of New York* v. *Fisher,* 234 Mich. 258.

In determining whether the collection of plaintiff's judgment is barred by defendant's discharge in bankruptcy the controlling issue is the exact nature of the debt on which such judgment was based. It is well settled that the form of action in which the judgment is obtained is not material. It is also settled law that in determining the nature of the obligation the inquiry is limited to the record on which the judgment is based. In *Field* v. *Howry,* 132 Mich. 687, 693, this court quoted with approval from the opinion in *Madison Township* v. *Dunkle,* 114 Ind. 262 (16 N. E. 593), as follows:

"It is well settled that the courts will look behind a note, a mortgage, or even a judgment, to ascertain the nature of the debt, and, if it is ascertained to be one which a discharge (in bankruptcy) does not bar, it will be so adjudged."

In *Rice* v. *Guider,* 275 Mich. 14, the judgment in question was based on a note but the record failed to show the nature of the debt so evidenced. Defendant, as in the case at bar, obtained his discharge in bankruptcy, and based his motion to stay the execution of a writ of garnishment to collect on the judgment on such discharge. In opposing the motion plaintiff sought to introduce testimony for the purpose of showing that the judgment was based, in large part, on fraud. It was held that such evidence was not competent, the court saying:

"A judgment is but an adjudication upon a record. Plaintiff could go back of the judgment but not back of the record."

Citing *Rice* v. *Guider, supra,* and other prior Michigan decisions, it was said in *Horner* v. *Nerlinger,* 304 Mich. 225:

"In determining whether or not plaintiff's claim under the chancery decree is within the exceptions of the statutes the court may examine the entire record in the chancery case."

See, also, *American Surety Co.* v. *McKiearnan,* 304 Mich. 322 (145 A. L. R. 1235).

Because of the nature of the questions involved, the case of *Guernsey-Newton Co.* v. *Napier,* 151 Wash. 318 (275 Pac. 724), is in point. There the defendant acted as local agent for the plaintiff, a general insurance agency, and collected premiums on policies of insurance, which he failed to remit. A check given by plaintiff to defendant was dishonored. Subsequently, plaintiff requested defendant to sign a note covering the indebtedness. Defendant, however, failed to sign and returned the note. In holding that his discharge in bankruptcy was not a bar to the enforcement of the debt, it was stated that even if the note had been signed and reduced to judgment, such fact would have had no material bearing upon the question before the court. In discussing defendant's liability the court said:

"In a bankruptcy proceeding, it is the original character of the liability which determines whether it is dischargeable. In order to determine the original character of the liability, the courts will look behind the judgment, if the obligation has been reduced to judgment."

In support of the statement of the rule, as quoted, the court cited *In re Pulver,* 146 Wash. 597 (264 Pac. 406); *Donald* v. *Kell,* 111 Ind. 1 (11 N. E. 782);

*Brown* v. *Hannagan*, 210 Mass. 246 (96 N. E. 714);
*Wade* v. *Clark*, 52 Iowa, 158 (2 N. W. 1039, 35 Am.
Rep. 262); *Arnold* v. *Smith*, 137 Minn. 364 (163
N. W. 672).

On behalf of defendant it is argued that the decision in *Rice* v. *Guider, supra,* should be regarded
as controlling in the case at bar. Such claim is not
tenable, the cases being distinguishable on the facts
involved. As above pointed out the judgment record before the court in *Rice* v. *Guider* did not show
the nature of the debt evidenced by the note on
which the judgment was based. The record before
us in the instant case sufficiently establishes that defendant's obligation to plaintiff arose from defendant's failure to remit insurance premiums that he
had collected. Plaintiff here made no attempt to go
beyond the record for the purpose of showing the
nature of the debt. As before stated, the record
as made was sufficient to show the actual facts. It
is apparent also that the checks given by defendant
to plaintiff, as well as the agreement of September 3,
1935, did not constitute the obligation but merely
evidenced it. *American Surety Co.* v. *McKiearnan,
supra.* The concluding paragraph of said agreement, above quoted, indicates the understanding of
the parties in this regard.

It is the further claim of the defendant that it
does not appear there was any actual bad faith on
his part, and that in the absence of a specific showing tending to establish such element, it cannot be
said that the debt was created by defendant's
"fraud, embezzlement, misappropriation or defalcation" while acting in a fiduciary capacity as the
terms are used in the provision of the bankruptcy
law above quoted. With such claim we are unable
to agree. The terms used are clearly not synonymous, and it may be assumed that the Congress

used each with the intention in mind that it should
be given its ordinary legal significance.   For the
purposes of this case it may be assumed that de-
fendant was not shown to have been guilty of fraud,
embezzlement or misappropriation, but it does not
follow that there was no ''defalcation'' on his part
within the meaning of the term as used in the bank-
ruptcy act.   It has been repeatedly held that one
who, acting in a fiduciary capacity, fails to observe
his duty to make payment of money coming into
his possession in such capacity, places himself, by
such failure, within the scope of the term ''defalca-
tion.''

In the case of *Central Hanover Bank & Trust Co.
v. Herbst* (C. C. A.), 93 Fed. (2d) 510 (114 A. L. R.
769), the circuit court of appeals of the second cir-
cuit had under consideration the construction of the
provision of the bankruptcy law here involved.
There the defendant, who had acted as receiver in a
mortgage foreclosure suit, was allowed a certain
sum of money as compensation by order of the court
by which he was appointed.   He withdrew the money
without waiting for the time for appeal to expire.
Subsequently, an appeal was taken and the order
was set aside.   In bankruptcy proceedings, insti-
tuted by defendant, he made the claim that a judg-
ment against him for the money he had drawn
under the court's order was dischargeable.   The
district court held otherwise, and the court of ap-
peals affirmed such holding on the theory that de-
fendant's action in withdrawing the money under
the circumstances was a ''defalcation'' within the
meaning of the bankruptcy act.   In reaching this
conclusion the court pointed out that defendant had
been awarded the money and was *prima facie* en-
titled to it but was, nevertheless, charged with notice
that the order might be appealed and reversed, in

which event it would be no protection to him. It was also suggested that the word "defalcation" must have been intended, as used in the statute, to cover defaults other than deliberate malversations, otherwise it added nothing to the prior terms. This decision is discussed in 1 Collier on Bankruptcy (14th Ed.), p. 1640 *et seq.* See, also, 7 Remington on Bankruptcy (5th Ed.), p. 850.

In *England Loan Co.* v. *Campbell,* 183 Ark. 49 (35 S. W. [2d] 75), it was held that:

"An administrator acts in a fiduciary capacity, and, while no fraud or embezzlement is charged, the failure to account and pay over to his successor is a defalcation of an officer acting in a trust capacity within the meaning of the statutes quoted. It was so expressly held in the case of *Morris* v. *Covey,* 104 Ark. 226 (148 S. W. 257)."

To the same effect is *Brown* v. *Hannagan, supra.* There the defendant, as executor of his mother's will, collected certain life insurance but failed to pay over to plaintiff, one of the beneficiaries, the amount to which plaintiff was entitled. In holding that a discharge in bankruptcy was not a bar to the collection of the debt thus created it was said:

"As the plaintiff's share never was paid to him nor turned over to the estate it must be assumed that it was appropriated by the defendant to his own use."

In *Kaufman* v. *Lederfine,* 49 Fed. Supp. 144, it was held that a discharge in bankruptcy was not a bar to a judgment against officers of a corporation, based on preferential payments to certain creditors, made after the corporation became insolvent and in violation of a State statute. It was said:

"While it is plausible to argue that the applicable section of the bankruptcy act was aimed at trans-

actions from which the bankrupt derived a personal gain, as is indicated by the terms "embezzlement" and "misappropriation," when it is considered that defalcation has a wider meaning than misappropriation and may characterize a transaction in which there is a mere deficit resulting from misconduct, it would seem that this court should not restrict the apparent intent of the statute by adopting too strait a construction, in face of the clear purpose of section 15 of the stock corporation law.

"One who is acting in a fiduciary capacity can betray his duties with entire success, whether he himself profits by the betrayal or not."

See, also, *In re Bernard* (C. C. A.), 87 Fed. (2d) 705; *In re Hammond* (C. C. A.), 98 Fed. (2d) 703 (certiorari denied 305 U. S. 646 [59 Sup. Ct. 149, 83 L. Ed. 418]); *Savin v. McNeill,* 244 Wis. 552 (13 N. W. [2d] 82).

Under the construction of the pertinent provision of the bankruptcy act indicated in the foregoing cases and others of like import, the conclusion follows that defendant's discharge in bankruptcy was not a bar to enforcement of plaintiff's judgment against him. Defendant, as plaintiff's agent, was acting in a fiduciary capacity, received the premiums in such capacity, and admittedly failed to make payment thereof to plaintiff as it was his duty to do. Based on the record before us such failure must be regarded as constituting a "defalcation" within the meaning of the bankruptcy act. Plaintiff's judgment was based on a debt expressly excepted from the operation of the discharge.

The order of the ciruit court is affirmed, with costs to plaintiff.

BUTZEL, C. J., and BUSHNELL, SHARPE, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.